**Case No. 16-1057**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

---

AARICA ROMERO,
Plaintiff-Appellant,

v.

TOP-TIER COLORADO, LLC and RICHARD J. WARWICK,
Defendants-Appellees.

---

On Appeal from the United States District Court for the District of Colorado
The Honorable Michael E. Hegarty, Magistrate Judge
Case No. 1:15-cv-02101-MEH

---

# APPELLEES' BRIEF

---

**NO ORAL ARGUMENT REQUESTED**

---

Gregory E. Givens
Law Offices of Gregory E. Givens, P.C.
18 N. Sierra Madre Street, Suite E
Colorado Springs, CO 80903
(719) 291-4353
gegivens@hotmail.com
*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS


Table of Authorities ....................................................................iii

Statement of Prior or Related Appeals ...................................................1

Corporate Disclosure Statement ..........................................................1

Issues Presented for Review ...............................................................1

Summary of Argument .......................................................................2

Argument .........................................................................................4

A. Romero Failed To State A Minimum Wage Claim Under The FLSA ..4

1. The Workweek Standard Under Klinghoffer Bros. Realty Corp. Applies .........................................................4

2. The Klinghoffer Standard Has Been Applied To Servers ........8

3. An Employer Is Obligated To Ensure That Its Tipped Employees Are Paid The Minimum Wage For Each Workweek ..........................................................10

4. Romero Failed to Allege That The Wages She Received Fell Below The Statutory Minimum ..................................11

B. Romero Was Engaged In One Occupation, Not Two ...................15

1. The Dual Jobs Regulation Authorizes Servers To Engage In Side Work And Is Not Ambiguous ...............................15

2. Romero Was An Employee Who Customarily And Regularly Received Tips ..........................................17

3. DOL Opinion Letters Establish Romero Was Not Engaged In Dual Jobs ......................................................21

4. The WHD's Interpretation Of The Dual Jobs Regulation Is Not Entitled To Deference ......................................23

C. The WHD's 20% Rule Is Unworkable ..................................27

Conclusion ......................................................................30

# TABLE OF AUTHORITIES

Cases:

*Adair v. City of Kirkland,*
185 F.3d 1055 (9th Cir. 1999) ....................................................6

*Allison v. Dolich*,
148 F. Supp. 3d 1142 (D. Or. 2015) ............................................26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................15

*Auer v. Robbins,*
519 U.S. 452 (1997) ......................................................23

*Balasanyan v. Nordstrom, Inc.*
913 F. Supp. 2d 1001 (S.D. Cal. 2012) .........................................7

*Barron v. Reich*,
13 F.3d 1370 (9th Cir. 1994) ....................................................24

*Barrentine v. Arkansas-Best Freight Sys., Inc.,*
450 U.S. 728 (1981) ......................................................14

*Blankenship v. Thurston Motor Lines, Inc.,*
415 F.2d 1193 (4th Cir. 1969) ....................................................6

*Christensen v. Harris County*,
529 U.S. 576 (2000) ...............................................12, 20, 23

*Christopher v. SmithKline Beecham Corp.,*
132 S. Ct. 2156 (2012) ................................................25-27

*Cooper v. Thomason*,
No. 06-CIV-1018-KI, 2007 WL 306311 (D. Or. Jan. 26, 2007) .............10

*Cuevas v. Monroe Street City Club, Inc.,*
752 F. Supp. 1405 (N.D. Ill. 1990) ..............................................8

*Cumbie v. Woody Woo, Inc.*,
596 F.3d 577 (9th Cir. 2010) ..........................................10, 12

*Doty v. Elias*,
733 F.2d 720 (10th Cir. 1984) ..........................................11

*Dove v. Coupe,*
759 F.2d 167 (D.C. Cir. 1985) ..........................................5-6

*Driver v. AppleIllinois, LLC,*
739 F.3d 1075 (7th Cir. 2014) ..........................................23

*Fast v. Applebee's Int'l, Inc.,*
638 F.3d 872 (8th Cir. 2011) ..........................................23, 27

*Fowler v. Incor*,
279 Fed. Appx. 590 (10th Cir. 2008) (unpublished) ..........................23

*Hensley v. MacMillan Bloedel Containers, Inc.,*
786 F.2d 353 (8th Cir. 1986) ..........................................5

*Kilgore v. Outback Steakhouse of Florida, Inc.,*
160 F.3d 294 (6th Cir. 1998) ..........................................19

*Ladegaard v. Hard Rock Concrete Cutters, Inc.*,
No. 00-C-5755, 2014 WL 1882249 (N.D. Ill. Aug. 18, 2014) ................6

*McElmurry v. US Bank Nat'l Ass'n*,
No. 04-CIV-642-HU, 2005 WL 2078334 (D. Or. Aug. 24, 2005) ............7

*Monahan v. County of Chesterfield,*
95 F.3d 1263 (4th Cir. 1996) ..........................................6, 14

*Montijo v. Romulus, Inc.,*
Nos. CV-14-264-PHX-SMM, CV-14-265-PHX-SMM, CV-14-464-PHX-SMM, 2015 WL 1470128 (D. Ariz. Mar. 30, 2015) ......................13, 17

*Myers v. The Copper Cellar Corp.,*
192 F.3d 546 (6th Cir. 1999) ..........................................19

*Oregon Rest. & Lodging Assoc. v. Solis*,
948 F. Supp. 2d 1217 (D. Or. 2013) ............................................26

*Pellon v. Bus. Representation Int'l, Inc.*,
528 F. Supp. 2d 1306 (S.D. Fla. 2007) ......................................26-27

*Probert v. Family Centered Services of Alaska, Inc.*,
651 F.3d 1007 (9th Cir. 2011) ................................................23-24

*Porter v. West Side Restaurant, LLC,*
No. 13-1112-JAR-KGG, 2014 WL 1642152 (D. Kan. Apr. 24, 2014) .......20

*Richardson v. Mountain Range Restaurants, LLC,*
No. CV-14-1370, 2015 WL 1279237 (D. Ariz. Mar. 20, 2015) .....13, 24, 30

*Roberts v. Apple Sauce, Inc.*,
945 F. Supp. 2d 995 (N.D. Ind. 2013) ......................................19-20

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944) ..........................................................23

*Stephenson v. All Resort Coach, Inc.*,
No. 2:12-CV-1097-TS, 2013 WL 4519781 (D. Utah Aug. 26, 2013) .......26

*Sullivan v. Riviera Holding Corp.*,
No. 14-CV-00165-APG-VCF 2014 WL 2960303 (D. Nev. Jun. 30, 2014)
..................6-7

*Trejo v. Ryman Hospitality Properties, Inc.*,
795 F.3d 442 (4th Cir. 2015) ...............................................14, 26

*Trinidad v. Pret a Manger (USA), Ltd.*,
962 F. Supp. 2d 545 (S.D.N.Y. 2013) ........................................26

*United States v. Klinghoffer Bros. Realty Corp.*,
285 F.2d 487 (2nd Cir. 1960) ..................................2, 4-5, 8, 12, 14

*United States Department of Labor v. Cole Enterprises, Inc.*,
62 F.3d 775 (6th Cir. 1995) ..................................................9-10

*Wass v. Dolgencorp, LLC*,
No. 6:13-CV-03267-MDH, 2014 WL 5307505 (W.D. Mo. Oct. 16, 2014) ..6

Statutes:

29 U.S.C. § 203(m) ……………………………………………4 & *passim*

29 U.S.C. § 203(t) ……………………………………………..4 & *passim*

29 U.S.C. § 206(a) ……………………………………………1 & *passim*

29 U.S.C. § 216(b) ……………………………………………..12-13

Regulations:

5 C.F.R. § 551.301(b) ………………………………………………5

29 C.F.R. § 531.52 ………………………………………………26

29 C.F.R. § 531.54 ………………………………………………26

29 C.F.R. § 531.56(a) ……………………………………………..17-18

29 C.F.R. § 531.56(d) ……………………………………………..15

29 C.F.R. § 531.56(e) ……………………………………………1 & *passim*

29 C.F.R. § 531.57 ……………………………………………..18, 22

29 C.F.R. § 531.59(a) ……………………………………………..11

29 C.F.R. § 531.59(b) ……………………………………………11

29 C.F.R. § 776.4(a) ……………………………………………4, 12

29 C.F.R. § 778.104 ……………………………………………..12

29 C.F.R. § 785.2 ……………………………………………..23

Other Authorities

Opinion Letter WH-502,
1980 WL 141336 (Mar. 28. 1980) ....................................21, 24

Opinion Letter FLSA-854,
1985 WL 1259240 (Dec. 20, 1985) ................................ 24-25

Opinion Letter FLSA 2009-23,
2009 WL 649014 (Jan. 16, 2009) (withdrawn Mar. 2, 2009) .21-22, 25

Wage and Hour Division Field Operations Handbook,
Ch. 30 (Dec. 9, 1988) *available at*
https://www.dol.gov/whd/FOH/FOH_Ch30.pdf

§ 30b02 ..........................................................7-8
§ 30d00(e) ...................................................1 & *passim*

Amicus Brief of the Secretary of Labor, Case No. 16-1057, [Document: 01019658172], filed 07/18/2016 ...............................................26

# GLOSSARY

Pursuant to Tenth Circuit Local Rule 28.2(C)(6), the following is a glossary of acronyms and/or terms used in this brief:

"FLSA" means the Fair Labor Standards Act of 1938, as amended, codified at 29 U.S.C. § 201 *et seq*.

"DOL" means the United States Department of Labor.

"WHD" means the Department's Wage and Hour Division.

"FOH" means the Field Operations Handbook issued by the Department's Wage and Hour Division.

"Romero" means Plaintiff-Appellant Aarica Romero.

"HuHot" means Defendant-Appellee Top-Tier Colorado LLC d/b/a HuHot Mongolian Grill.

## STATEMENT OF PRIOR OR RELATED APPEALS

Pursuant to Tenth Circuit Local Rule 28.2(C)(1), Defendants-Appellees notify this Court that no other appeal in or from the same civil action in the lower court was previously before this or any other appellate court under the same or similar title.

## COROPORATE DISCLOSURE STATEMENT

Defendants-Appellees submit this Corporate Disclosure Statement pursuant to Federal Rule of Appellate Procedure 26.1 and state that there is no parent corporation or any publicly held corporation owning 10% or more of Top Tier Colorado LLC's stock.

## ISSUES PRESENTED FOR REVIEW

Whether the district court erred in dismissing Plaintiff-Appellant Aarica Romero's claims alleging violations of the FLSA minimum wage provisions under 29 U.S.C. § 206(a), where the district court found that Romero never alleged that HuHot paid her less than $7.25 per hour when including her tips for any particular workweek, and where the district court did not defer to the United States Department of Labor Wage and Hour Division's interpretation of the dual jobs regulation (29 C.F.R. § 531.56(e)) set forth in its Field Operations Handbook § 30d00(e) when it rejected Romero's minimum wage claims.

## SUMMARY OF ARGUMENT

The district court properly dismissed Romero's FLSA minimum wage claims because she never alleged that she ever received less than the minimum wage for any workweek she worked for HuHot. The district court held that, under *United States v. Klinghoffer Bros. Realty Corp.* and its progeny, an employer violates Section 6(a) when an employee's total pay for the workweek divided by the total number of hours worked that workweek comes to less than $7.25 per hour. The district court held that Romero never alleged that HuHot failed to ensure that she receive less than the FLSA minimum wage when including her tips. The court noted that Romero's minimum wage claim was entirely predicated on the DOL WHD Field Operations Handbook. The court was not persuaded by Romero's reliance on Section 30d00(e) of the FOH because, among other things, regardless of the frequency with which non-tipped work was assigned, no minimum wage claim was stated against HuHot unless Romero's average wage for the workweek, including tips, fell below the minimum wage of $7.25 per hour. Romero never alleged that HuHot failed to pay her the minimum wage for a particular workweek. Therefore, court dismissed Romero's minimum wage claims.

Even if the district court had reached the issue of whether it should rely on the DOL Handbook, Appellees believe it would have reached the same result. This is because, under the dual jobs regulation (29 C.F.R. § 531.56(e)), Romero worked in one occupation as a server, not two. First, the regulation is not ambiguous, and

authorizes a server to engage in side work without becoming employed in a second occupation. The tasks alleged in Romero's complaint all fall within the ambit of a server's side work. Second, Romero was an employee who customarily and regularly received tips because, as a server, her primary duty was to serve customers. Romero does allege to the contrary. Third, the Wage and Hour Division itself in its opinion letters has opined that a server may perform preparatory, maintenance, and closing duties, before or after her shifts, and still remain employed in a tipped occupation. Romero does not allege, for example, that she worked entire shifts in the kitchen as a cook or entire shirts washing dishes as a dishwasher. Fourth, this Court should not defer to the WHD's FOH § 30d00(e) because, *inter alia,* it is flatly inconsistent with the FLSA, conflicts with the DOL's own interpretations, adds new requirements to the regulation, and is unpersuasive. Finally, application of the DOL's interpretation of the dual jobs regulation is unworkable and would undermine the restaurant industry's long-standing reliance on the FLSA's tip credit provisions.

## ARGUMENT

### A. Romero Failed To State A Minimum Wage Claim Under The FLSA

Under 29 U.S.C. § 206(a), the FLSA requires that for every workweek "every employer shall pay to each of [its] employees" the federal minimum wage, except for tipped employees, who receive $2.13 per hour as a cash wage, with the rest of their federal minimum wage (currently $7.25 per hour) coming from customer tips. (Emphasis added). 29 U.S.C. § 206(a)(1), § 203(m). Under Section 3(m)'s tip credit provision, employers may pay employees at an hourly rate below the minimum wage, so long as for the workweek the hourly wage and the employees' tips, taken together, are at least the equivalent of the federal minimum wage.

#### 1. The Workweek Standard Under Klinghoffer Bros. Realty Corp. Applies

The provisions of the FLSA set the minimum wage in terms of an hourly rate. However, although not specifically addressed by the Tenth Circuit, most courts throughout the country have held that an employer meets the minimum wage requirements if the total weekly wage paid is equal to or greater than the number of hours worked in the week multiplied by the statutory minimum hourly rate. In the seminal case, *United States v. Klinghoffer Bros. Realty Corp.,* the second circuit adopted the workweek standard for determining whether employers

meet their minimum wage obligations. 285 F.2d 487 (2nd Cir. 1960). There, the court held:

> If the total wage paid to each guard in this case during any given week is divided by the total time he worked for that week, the resulting average hourly wage exceeds $1.00 for every week and every guard involved. We believe this is all that is necessary to meeting the requirements of [§] 206(a). The Congressional purpose underlying [section 206] was to guarantee a minimum livelihood to the employees covered by the Act. Payment at intervals shorter than weekly is unusual and is not necessary to enable the employees to meet their customarily obligations. Accordingly, the Congressional purpose is accomplished so long as the weekly wage paid by the employer meets the minimum weekly requirements of the statute, such minimum weekly requirement being equal to the number of hours actually worked that week multiplied by the minimum hourly statutory requirement.

*Klinghoffer*, 285 F.3d at 490. *See also, Hensley v. MacMillan Bloedel Containers, Inc.* 786 F.2d 353, 357 (8th Cir. 1986); 29 C.F.R. § 776.4(a) ("The workweek is to be taken as the standard in determining the applicability of the Act."); 5 C.F.R. § 551.301(b) ("An employee has been paid in compliance with the minimum wage provisions of this subpart if the employee's hourly rate of pay … *for the workweek* is equal to or in excess of the rate specified in section 6(a)(1) of the Act." (emphasis added)).

The workweek rule for determining a violation of Section 6(a)(1) has been applied to a variety of payment plans. *See, e.g., Hensley,* 786 F.2d at 357 (truck driver who received more than the minimum wage for trips compensated by mileage driven could not assert an FLSA § 206(a) claim); *Dove v. Coupe*, 759 F.2d 167, 171 (D.C. Cir. 1985) ("The workweek measuring rod has never been

promulgated as an agency regulation; however, the Wage and Hour Division continues to adhere to it, and the courts have agreed that the workweek standard generally represents an entirely reasonable reading of the statute."); *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (police officers failed to state minimum wage violation where their salary, when averaged across their total time worked, still payed them above the minimum wage); *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1282 (4th Cir. 1996) (citing state authority and the Department of Labor's opinions that employees who received at least an average hourly wage exceeding the minimum wage have no valid FLSA claims); *Blankenship v. Thurston Motor Lines, Inc.,* 415 F.2d 1193, 1198 (4th Cir. 1969) (dock-workers' weekly salary, when averaged across a workweek, exceeded the federal minimum wage); *Wass v. Dolgencorp, LLC*, No. 6:13-CV-03267-MDH, 2014 WL 5307505 at *3 (W.D. Mo. Oct. 16, 2014) (no minimum wage violation for employer failing to compensate employee for work performed during her meal breaks when employee was paid well above the minimum wage for all hours she worked per week); *Ladegaard v. Hard Rock Concrete Cutters, Inc.*, No. 00-C-5755, 2014 WL 1882249 at *5 (N.D. Ill. Aug. 18, 2014) (employer that did not compensate driver and helpers for preparation, travel, and cleanup time did not violate FLSA where every employees' average hourly pay for any given work week always exceeded the minimum wage); *Sullivan v. Riviera Holdings Corp.*, No. 2-14-CV-00165-APG-VCF, 2014 WL 2960303 at *3 (D. Nev. Jun. 30, 2014)

(hotel employees alleging hotel required them to transport cash to and from the "cashier's cage" before and after their scheduled shifts failed to state minimum wage claim absent sufficient facts to infer that their average hourly pay for any given workweek fell below the statutory minimum); *Balasanyan v. Nordstrom, Inc.,* 913 F. Supp. 2d 1001, 1008-1009 (S.D. Cal. 2012) (salespersons compensated for time spent on stocking assignments, pre-opening, and post-closings periods through commissions earned, which they believed could only be used to compensate for commission producing activities, failed to state FLSA Section 6(a) claim when they each received average hourly salaries that exceeded the minimum wage); *McElmurry v. US Bank Nat'l Ass'n*, No. 04-CIV-642-HU, 2005 WL 2078334 at *4 (D. Or. Aug. 24, 2005) (granting summary judgment where minimum wage claims by employees alleged that employer's time keeping system rounded weekly time reports down when calculating compensation because lowest possible hourly rate still exceeded federal minimum wage).

The United States Department of Labor itself has stated that the workweek standard applies for minimum wage compliance:

> In non-OT w/w's or in w/w's in which the OT provisions do not apply, an employee subject to section 6 of the FLSA is considered to be paid in compliance if the overall earnings for the w/w equal or exceed the amount due at the applicable MW. This is true regardless of whether the employee is paid on the basis of a single hourly rate, different hourly rates, commissions, certain bonuses, or some combination of these methods. In other words, if the employee's total earnings for the w/w (including certain bonuses such as a production bonus - see FOH 30b17) divided by compensable hours equals or exceeds the applicable MW, the employee has been paid in compliance

with Sec 6. These principles will also apply where an employee is not compensated for time which is compensable under the FLSA.

DOL Field Operations Handbook § 30b02 (Emphasis in original). The same principle applies to tipped employees. If a tipped employee's total earnings for the workweek (combining the cash wage and tips under Sections 3(m) and (t)) divided by compensable hours equals or exceeds the minimum wage, the employee had been paid in compliance with Section 6.

**2. The Klinghoffer Standard Has Been Applied To Servers**

The workweek standard for determining a minimum wage violation has also been applied to servers. For example, in *Cuevas v. Monroe Street City Club, Inc.,* part-time servers who were paid $2.01 or $2.11 per hour (the applicable cash wage) plus a gratuity for all scheduled hours worked during any one work week were not paid for time (about an hour) they spent each day setting up tables before they were allowed to clock in. 752 F. Supp. 2d 1405, 1410 (N.D. Ill. 1990). The servers brought suit for violations of Section 206(a) of the FLSA. The district court held that each plaintiff, with one exception, received weekly pay that, when divided by the total hours worked, was well in excess of the applicable minimum wage for each week worked, since each plaintiff received in addition to their cash wage shares of compulsory service charges billed to customers. *Cuevas*, 752 F. Supp. at 1416-1417, n. 18.

In *United States Department of Labor v. Cole Enterprises, Inc.*, waiters and waitresses worked an average of one half-hour per day outside their scheduled shift hours, and the Defendants failed to compensate its servers for this extra work. 62 F.3d 775, 779 (6th Cir. 1995). Most servers began working prior to the beginning of their shift, and continued working after the shift ended, in order to prepare the restaurant for customers and clean up afterward. *Cole Enterprises,* 62 F.3d at 778. The employer contended that the employees' weekly wage met the minimum wage requirements, even though some pre-shift or post-shift work was performed. The sixth circuit found that the employees' hourly wage, *including the tip credit*, paid for <u>scheduled</u> shift hours equalled the minimum wage rate, but did not exceed it, so that the <u>total weekly wage</u> did not meet the minimum wage requirements once the pre-shift and post-shift work was included. *Id.* at 780.

*Cole Enterprises* is instructive. The servers' pre-shift and post-shift work was "non-tipped side work," since it included "setting up the dining room, preparing coffee and tea, filling condiment containers, setting out side dishes and desserts, cleaning tables and countertops, finishing serving customers, and putting away equipment." *Id.* at 779. Notably, the court did not find that this work was "unrelated to the servers' tipped occupation" such that the employer was not permitted to take the tip credit for that time. Had the employer paid its tipped employees the applicable cash wage and tip credit so that its tipped employees

received the statutory minimum wage when including their pre-shift and post-shift work, it would have complied with Section 6(a) of the FLSA. *Id.* at 780.

Finally, in *Cooper v. Thomason*, No. 06-CIV-1018-KI, 2007 WL 306311 (D. Or. Jan. 26, 2007), the plaintiff brought claims against her employer for violations of the FLSA minimum wage because of her contributions to her employer's mandatory tip pool which included kitchen staff and because her employer failed to pay her for working through her meal periods, thereby allegedly dropping her wages below the federal minimum wage as a result. The district court held that the plaintiff's wages were high enough that even including hours worked during lunch and during uncompensated hours, the employer paid at least the FLSA minimum wage each work week. *Cooper*, 2007 WL 306311 at *3.

### 3. An Employer Is Obligated To Ensure That Its Tipped Employees Are Paid The Minimum Wage For Each Workweek

Section 3(m) requires an employer pay a tipped employee a cash wage of $2.13 per hour and an additional amount on account of tips received by such an employee equal to the difference between the cash wage and the $7.25 minimum wage under Section 6(a). If a tipped employee does not receive the requisite amount in tips equal to the maximum tip credit ($5.12), then the employer must pay the tipped employee the difference. In other words, if the cash wage plus tips are not enough to meet the minimum wage, the employer must "top up" the cash wage. *Cumbie v. Woody Woo, Inc.,* 596 F.3d 577, 580 (9th Cir. 2010). *See also,*

*Doty v. Elias,* 733 F.2d 720, 724 (10th Cir. 1984) ("Congress' purpose in enacting § 203(m) [was] to ensure that an employer may not use the tips of a tipped employee to satisfy more than a specified percentage of the Act's minimum hourly wage."); 29 C.F.R. § 531.59(b) ("In order for the employer to claim the maximum tip credit, the employer must demonstrate that the employee received at least that amount in actual tips."). In contrast, if the tipped employee makes enough in tips to meet the minimum wage, the employer need not make up the difference. Thus, in a situation where a tipped employee's earned tips do not equal or exceed $5.12 per hour averaged over the workweek, and where an employer does bridge the difference between the cash wage and the minimum wage so that the tipped employee's pay for the workweek equals or exceeds the minimum wage, *a fortiori* the employee cannot allege a minimum wage violation, even if the tipped employee spent time performing non-tipped duties during the workweek at the tip credit rate, since the employer has met its minimum wage obligation by combining the employee's direct hourly wage and the employer's tip credit. *See* Section 3(m); 29 C.F.R. § 531.59(a).

#### 4. Romero Failed To Allege That The Wages She Received Fell Below The Statutory Minimum

To claim improper compensation under Section 6(a), a plaintiff must allege that the wages she received fell below the statutory minimum. Romero argues at length that tips are not wages, and therefore her tips earned may not be counted

toward the employer's minimum wage obligations for the time during which she worked in a non-tipped occupation. However, she does not allege that her cash wage plus tips caused her regular rate of pay to fall below $7.25 per hour when averaged across any workweek. (Aplt. App. at 009-0014).

As set forth above, the workweek as a whole, ***not*** each individual hour (or minute) within the workweek, determines an employee's "wages" for purposes of determining FLSA violations. See 29 C.F.R. §§ 776.4(a), 778.104. Thus, an employer's failure to compensate an employee the full minimum wage for any particular hours she worked does not violate the minimum wage provisions of the FLSA if the total wage paid to her in any given workweek divided by the total hours worked that week equals or exceeds the applicable minimum wage. *Klinghoffer*, 265 F.2d at 490. To allege a minimum wage claim under the FLSA, therefore, a complaint must allege that the plaintiff's weekly pay fell below the statutory minimum.

An employment practice does not violate the FLSA unless the FLSA prohibits it. *Christensen v. Harris County,* 529 U.S. 576, 588 (2000); *Cumbie,* 596 F.3d at 583 (nothing in the text of the FLSA purports to restrict employee tip-pooling arrangements when no tip credit is given). The FLSA creates a private right of action against any employer who violates § 206. *See* 29 U.S.C. § 216(b) ("Any employer who violates the provisions of section 206 … of this title shall be liable to the employee or employees affected in the amount of their unpaid

minimum wages … and in an additional equal amount as liquidated damages”) (emphasis added).

Here, there is no such allegation: Romero does not plead anywhere that her total pay for any particular workweek she worked, including tips, divided by the total hours she worked for any particular workweek fell below $7.25 per hour. (Aplt. App. at 009-0014). Since Romero does not allege that her weekly pay ever fell below $7.25 per hour, the FLSA does not grant Romero a remedy for minimum wage violations. 29 U.S.C. §§ 206(a), 216(b). This is so regardless of whether HuHot failed to pay Romero $7.25[1] for each hour she worked, or for the time she spent performing non-tipped duties related or unrelated to her server occupation. *Richardson v. Mountain Range Restaurants, LLC,* No. CV-14-1370, 2015 WL 1279237 at *5 (D. Ariz. March 20, 2015); *Montijo v. Romulus, Inc.,*Nos. CV-14-264-PHX-SMM, CV-14-265-PHX-SMM, CV-14-464-PHX-SMM, 2015 WL 1470128 at *8 (D. Ariz. March 30, 2015) (“[R]egardless of the frequency with which non-tipped work was assigned, no minimum wage claim is stated … unless Plaintiffs’ average wage for the workweek, including tips, fell below the minimum wage.”). *Ibid.*

Romero argues that the district court’s decision “replaces the prerequisites to the tip credit found in Sections 3(m) and (t).” Not true. The district court, in

[1] HuHot paid Romero a cash wage of $4.98 per hour and took a tip credit of $3.02 to meet the Colorado minimum wage of $8.00 under the 2014 Colorado Minimum Wage Order.

relying on *Klinghoffer* and its progeny, did not hold that HuHot need not comply with Sections 3(m) and (t) for its tipped employees. Tellingly, Romero never alleged that HuHot failed to paid her the Section 3(m) cash wage of $2.13 per hour. She never alleged that HuHot "took a percentage of [her] tips for itself or failed to inform [her] of the tip credit provision."[2] (Aplt. App. at 009-0014). She never alleged that for any workweek HuHot failed to bridge the difference between the cash wage and the tips she received. *Id.* And most importantly, she never alleged that HuHot failed to ensure that she receive $7.25 per hour when including her tips —that HuHot did not pay her the minimum wage for a particular workweek. *Id.*

The purpose of the FLSA is to "protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Systems, Inc.*, 450 U.S. 728, 739 (1981). The FLSA is a "minimum wage/ maximum hour law." *Monahan*, 95 F.3d at 1266. It "is unavailing where wages do not fall below the statutory minimum and hours do not rise above the overtime threshold." *Trejo v. Ryman Hospitality Properties, Inc.*, 795 F.3d 442, 448 (4th Cir. 2015). Where, as here, an employee like Romero receives pay well above the minimum wage, the FLSA's primary purpose is filled. By earning more than the minimum wage every week she worked at HuHot, Romero does not plausibly state

---

2 Nor could she. HuHot complied with <u>all</u> requirements of the statute for tipped employees. Romero's minimum wage claim is solely based on the DOL's FOH § 30d00(e).

an FLSA claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679-81 (2009). Her Section 6(a) claims therefore fail as a matter of law.

### B. Romero Was Employed In One Occupation, Not Two

#### 1. The Dual Jobs Regulation Authorizes Servers to Perform Side Work And Is Not Ambiguous

29 C.F.R. § 531.56(e) states in full:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee, if he customarily and regularly receives at least $30 a month in tips for his work as a waiter, is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of a maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. It is likewise distinguishable from the counterman who also prepares his own short orders or who, as part of a group of countermen, takes a turn as a short order cook for the group. Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips.

29 C.F.R. § 531.56(e).

It is undisputed that Romero was a "tipped employee" under Section 3(t) of the Act and 29 C.F.R. § 531.56(d). However, she claims she was engaged in "dual jobs" under the regulation when she performed non-tipped work related and unrelated to her occupation as a server. Romero also claims that the tip-credit may only be taken when tipped employees are engaged in tip-producing "traditional tasks."

Romero asserts in her Complaint that she was required to engage in activities such as brewing coffee, stocking ice, taking out the trash, sweeping, mopping, washing dishes, and preparing condiments. Even taking Romero's allegations as true, they do not state a viable claim. The DOL's regulations themselves acknowledge that there is nothing per se improper about tipped employees performing these kinds of tasks. Indeed, 29 C.F.R. § 531.56(e) expressly lists "cleaning and setting tables, toasting bread, making coffee, and occasionally washing dishes or glasses," as well as "prepar[ing] … short orders or … tak[ing] a turn as a short order cook" as examples of proper tipped work. These are all duties related to the server occupation, and consistent with what servers have done for decades.

Simply because a server engages in the above duties does not transform her server occupation into two occupations. This is because the regulation makes clear that such duties "need not by themselves be directed toward producing tips." 29 C.F.R. § 531.56(e). A server who performs a whole range of duties other than waiting tables is not employed in two occupations even if, under the regulation, she spends more than 20% of her time performing such related duties. *Id.; see* FOH § 30d00(e). In essence, the dual jobs regulatory framework identifies an employee performing two or more entirely distinct, non-overlapping jobs, specifically allows a server to engage in incidental related duties (side work), and does not cap side work at 20%. The regulation does not distinguish which duties are related or

unrelated to the tipped occupation. Romero was engaged in one occupation, server, and the server occupation inherently includes side work. Based on the regulation, the district court was not required to identify the duties Romero performed in her server occupation and then classify some as related tipped duties and some as non-related non-tipped duties, and then implement a different occupational standard for the non-tipped duties as compared with her tipped occupation server duties. *Montijo*, 2015 WL 1470128 at *12.

Contrary to Romero and *Amicus's* assertions, the dual jobs regulation is not ambiguous and therefore the WHD's interpretation of the regulation should not be accorded deference by this Court. The Complaint in no way suggests that HuHot tasked Romero with duties that are unusual or in any meaningful way different from how restaurants across the country assign work to tipped employees now and indeed since the 1960s when the FLSA first applied to restaurant workers. Congress was surely aware of practices in the industry when it authorized the tip credit for employees in tipped occupations.

**2. Romero Was An Employee Who Customarily and Regularly Received Tips**

29 C.F.R. § 531.56(a) states in full:

> In General: An employee who receives tips, within the meaning of the Act, is a 'tipped employee' under the definition in section 3(t) when, in the occupation in which he is engaged, the amounts he receives as tips customarily and regularly total 'more than $30 a month.' An employee employed in an occupation in which the tips he receives meet this minimum standard is a 'tipped employee' for whom the wage credit provided by

> section 3(m) may be taken in computing the compensation due him under the Act for employment in such occupation, whether he is employed in it full time or part time. An employee employed full time or part time in an occupation in which he does not receive more than $30 a month in tips customarily and regularly is not a 'tipped employee' within the meaning of the Act and must receive the full compensation required by its provisions in cash or allowable facilities without any deduction for tips received under the provisions of section 3(m).

29 C.F.R. § 531.56(a) (emphasis added).

Section 531.56(a) provides that an employee is a tipped employee within the meaning of the act if she customarily and regularly receives more than $30 per month in tips in the occupation in which she is engaged. To be a "tipped employee," an employee must perform tipped work in order to customarily and regularly receive tips, especially to meet Section 3(t)'s $30 per month threshold. Notably, Section 531.56(a) does not provide that a tipped occupation is limited or defined by the duties the tipped employee performs. Nor does it limit the type of tasks the tipped employee performs or limit the time a tipped employee spends on certain tasks in her server occupation. Romero does not allege that HuHot failed to ensure that she receive at least $30 per month in tips. (Aplt. App. at 008-009).

Although not pled, Romero was part of HuHot's tip pool and shared her tips with other employees. As a server, a quintessential tipped occupation, Romero qualified under the statute and regulations to participate in her employer's tip pool because she "customarily and regularly" received tips. *See* Section 3(t); 29 C.F.R. § 531.57. Case law has held that servers do not disqualify themselves from

participating in their employer's tip pool simply because they perform side work incidental to their regular duties of a server. This is because they customarily and regularly receive customer tips as a result of servicing customers. *See Myers v. The Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999) (salad preparers who had *no* direct intercourse with diners, worked *entirely* outside the view of restaurant patrons, and *solely* performed duties traditionally classified as food preparation or support work, could not validly be categorized as 'tipped employees' under section 203(m) and (t)); *Kilgore v. Outback Steakhouse of Florida, Inc.*, 160 F.3d 294, 301 (6th Cir. 1999) (restaurant hosts were properly included in the tip pool because they were part of an occupation that customarily and regularly received tips and were in fact employees who customarily and regularly received tips).

The *Myers* court did not hold that a server who performs some food preparation duties during her shift as a server is not a tipped employee, or that any of the time the server spends in this activity must be compensated at the minimum wage without regard to tips. *Roberts v. Apple Sauce, Inc.*, 945 F. Supp. 2d 995, 1001 (N.D. Ind. 2013). Likewise, the court in *Kilgore* did not hold that duties like washing dishes, preparing food, or cleaning, when performed by a tipped employee, must be compensated at the minimum wage rate at all times, or that servers who performed such duties were employed in a second occupation of a dishwasher, cook, or janitor. *Kilgore*, 160 F.3d at 301. The *Roberts* court held that

food preparation, cleaning, and dishwashing can be related duties to the server occupation:

> Putting aside the degree of deference owed to the Field Operations Handbook (which the Defendants dispute), the cases, together with the regulations and interpretive guidance, lend no merit to the Plaintiff's proposition that duties like food preparation and general cleaning around the dining room cannot be incidental to the regular duties of a server and therefore must be compensated at minimum wage regardless of the percentage of time the employee spends on such duties or whether the duties are generally assigned to servers. The regulation, 29 C.F.R. § 531.56(e), specifically identifies a server's time spent cleaning and setting tables, toasting bread, making coffee, and washing dishes as duties that are related to her occupation. Thus, simply because a duty may overlap with another occupation does not mean that the employee is employed in a dual job.

*Roberts*, 945 F. Supp. 2d at 1002; *see also, Porter v. West Side Restaurant, LLC,* No. 13-1112-JAR-KGG, 2014 WL 1642152 at *10 (D. Kan. April 24, 2014) (server who occasionally worked full shifts as an expediter [a non-tipped occupation] was not eligible for employer tip pool during those expediter shifts and therefore must be paid the minimum wage for those shifts).

Nothing in the FLSA suggests that the "20% issue" is even remotely unlawful or prohibited under the statute. *See Christensen,* 529 U.S. at 588. Further, the fact that Romero did receive sufficient tips (there is no allegation to the contrary in the Complaint, Aplt. App. at 009-0015) to bring her pay to full minimum wage itself shows that she worked in a tipped occupation and spent the vast majority of her time serving customers and performing work consistent with industry standards for servers. That Romero is alleged to have spent time

performing incidental duties related to her server occupation does not mean she was employed in "dual jobs" under 29 C.F.R. § 531.56(e).

### 3. DOL WHD Opinion Letters Establish Romero Was Not Engaged in Dual Jobs

As set forth above, the dual jobs regulation itself supports the concept that severs can intermittently perform various duties that are not "themselves tip generating" and still remain working in a tipped capacity, consistent with the statute's focus on tipped occupations. *See* Section 3(t); 29 C.F.R. § 531.56(e). The WHD's opinion 1980 Opinion Letter indicates that "after hours" cleaning activities by a server that are assigned generally to server staff do constitute "tipped employment," such that the server remains working in a tipped occupation. See Opinion Letter WH-502 1980 WL 141336 (March 28, 1980). Similarly, in a 2009 opinion letter, the agency indicated "[w]e do not intend to place a limitation on the amount of duties related to a tip-producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties . . ." The DOL concluded that an employer could take a tip credit for an employee in the occupation of "bar back," even though the bar back employee spent *none* of his time waiting on customers. The services performed by the bar back (bartender's assistant) included restocking the bar, cleaning the bar, organizing the bar, cleaning empty glasses, taking out the trash, and cleaning the floor. Because the employee was in an occupation where he received more than

$30 a month in tips, he was a "tipped employee" and the employer could thus take a tip credit. WHD Opinion Letter FLSA 2009-23, 2009 WL 649014 (Jan. 16, 2009).

The FLSA discusses tipped occupations, not tipped duties or tasks. *See* Section 3(t). Here, there is no dispute that Romero worked in a tipped occupation as a server. (Aplt. App. at 008); 29 C.F.R. § 531.57. She does not allege, for example, that she worked entire shifts in the kitchen engaged in another occupation as a cook; or that she worked entire shifts washing dishes engaged in another occupation as a dish washer. (Aplt. App. at 009-0015). Rather, Romero alleges that she performed various tasks intermittently during her shifts, or at the beginning or end of her scheduled shifts. (Aplt. App. at 0010). Romero also does not allege that her incidental duties related to her tipped occupation were routinely performed by non-servers. (Aplt. App. at 009-0015). And there is no allegation in her complaint that she or other "specific employees" were routinely assigned to maintenance, preparatory, or closing duties. (Aplt. App. at 009-0015). In fact, her allegations suggest that these incidental duties were assigned generally to HuHot's servers. Such allegations do not state a minimum wage violation based on the dual jobs regulation.

### 4. The DOH's Interpretation of the Dual Jobs Regulation Is Not Entitled to Deference

Romero and *Amicus* rely on *Driver v. AppleIllinois,* 739 F.3d 1073 (7th Cir. 2014) and *Fast v. Applebee's Int'l, Inc.,* 683. F.3d 872 (8th Cir. 2011) for the proposition that the dual jobs regulation is ambiguous and therefore this Court must defer to the WHD's interpretation of the regulation as set forth in FOH § 30d00(e). *See Auer v. Robbins*, 519 U.S. 452, 461-62 (1997) (discussing deference in the context of an agency's interpretation of its own ambiguous regulation unless the interpretation is plainly erroneous, inconsistent with the regulation, or does not reflect the agency's fair and considered judgment on the matter in question).

According to the DOL, "[t]he ultimate decisions on interpretations of the [FLSA] are made by the courts." 29 C.F.R. § 785.2. Thus, courts are to defer to DOL interpretative regulations "only to the extent they have the power to persuade." *Fowler v. Incor*, 279 Fed.Appx. 590, 598 (10th Cir. 2008), citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 138 (1944). "Similarly, the courts are not bound by informal administrative opinions; instead, interpretations such as those in opinion letters — like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law — do not warrant *Chervon*-stye deference." *Id.,* citing *Christensen*, 529 U.S. at 587. Indeed, the DOL FOH is not a "proper source of interpretive guidance [because] [t]he handbook itself says that it 'is not to be used as a device for establishing

interpretative policy.' [DOL Wage and Hour Field Operations Handbook] Forward at 1, available at http://dol.gov/whd/FOH/index.htm."; *Probert v. Family Centered Services of Alaska, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011). Rather, it is meant only to provide guidance for employees of the Wage and Hour Division charged with enforcing the FLSA. *Barron v. Reich*, 13 F.3d 1370, 1372 (9th Cir. 1994). The WHD has never initiated an enforcement litigation against a restaurant based on sub-regulation § 30d00(e). *Richardson,* 2015 WL 1279237 at *8. *See also*, *Amicus Brief of the Secretary of Labor*, Case No. 16-1057, [Document: 01019658172], filed 07/18/2016.

Section 30d00(e) is neither persuasive nor entitled to deference for several reasons. The WHD in its opinion letters regarding the dual jobs regulation has inconsistently provided guidance, first taking one position, then reversing course, reversing course again, then withdrawing the original position. For example, in its 1980 opinion letter, the DOL first opined that duties performed by tipped employees *after closing hours* did not render them untipped employees. These services included cleaning the salad bar, placing condiment crocks in the cooler, cleaning the waitress station, stocking the waitress station, cleaning tables, filling salt and pepper shakers, and vacuuming the dining room. See WHD Opinion Letter WH-502, 1980 WL 141336 (Mar. 28, 1980). Next, in a 1985 opinion letter, the DOL indicated that "salad preparation" that constituted 40% of a server's working time did not qualify for the tip credit, mainly because such work was

specifically performed by workers in another job category, the chefs. WHD Opinion Letter FLSA-854 WHD, 1985 WL 1259240 (Dec. 20, 1985). Then, in 1988, in its internal FOH, the agency indicated that any time "in excess of 20%" spent "performing general preparation work or maintenance" was not eligible for the tip credit. *See* WHD FOH § 30d00(e). This requirement was created out of whole cloth, as it has no basis in the statute or in the underlying dual jobs regulation. In a final twist, in a 2009 opinion letter, the agency rejected the 20% concept entirely, only the rescind the letter when there was a change in the executive administration. WHD Opinion Letter FLSA 2009-23, 2009 WL 649014 (Jan. 15, 2009); WHD Opinion Letter, 2009 DOLWH LEXIS 27 (Mar. 2, 2009).

Given this history, it strains common sense for Romero to contend that employers have had sufficient notice and clarity to evaluate their compliance with the DOL's position. Indeed, the agency's opinion letters have suggested that intermittent cleaning and other such duties, even performed before or after the restaurant is open, are subject to the tip credit. The dual jobs regulation itself makes this point. At best, over the years the DOL has been unclear in its approach. By engaging in such an inconsistent approach in its opinions regarding the dual jobs regulation, the DOL's 1988 sub-regulation on the same issue is neither persuasive nor entitled to deference. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-70 (2012) (affording no deference to the DOL's interpretation of its own regulations regarding the outside salesperson exemption

because it was "flatly inconsistent with the FLSA," the agency had issued conflicting interpretations, and the agency's position was unpersuasive).

Courts do not hesitate to reject even DOL regulations — which, unlike the FOH at issue here — go through the public notice and comment process — when they are inconsistent with statutory intent. For example, several courts have rejected the DOL's 2011 amendments to 29 C.F.R. §§ 531.52—.54, which relate to an employer's ability to retain an employee's tips if the employer is not taking a tip credit toward the employee's minimum wage. *See, e.g., Trinidad v. Pret a Manger (USA), Ltd.*, 962 F. Supp. 2d 545, 562-563 (S.D.N.Y. 2013) (rejecting class certification because "the Court is highly skeptical that the DOL's regulations permissibly construe the statute"); *accord, Oregon Rest. & Lodging Assoc. v. Solis,* 948 F. Supp. 2d 1217, 1224-27 (D. Or. 2013) (holding relevant DOL regulations to be invalid because § 203(m) is clear and unambiguous); *Stephenson v. All Resort Coach, Inc.*, No. 2:12-CV-1097-TS, 2013 WL 4519781, at *8 (D. Utah Aug. 26, 2013); (granting summary judgment for defendant because "the regulation runs contrary to the plan language and structure" of the statute); *Allision v. Dolich*, 148 F. Supp. 3d 1142, 1149-51 (D. Or. 2015) (granting summary judgment for defendant on plaintiffs' Section 206(a) claim and finding that the new regulations do not vindicate any of the FLSA's specific statutory protections); *Trejo*, 795 F.3d at 447-48 (Section 3(m) does not create freestanding requirements pertaining to all tipped employees). In short, even as to regulatory guidance, the DOL has a long

history of issuing interpretations regarding tipped employees that courts have struck down as inconsistent with the statute.

Given the language of the dual jobs regulation itself and the agency's series of opinion letters, like the outside sales employers in *Christopher*, restaurant employers have had "little reason to suspect" that their "longstanding practices" related to side work and a team approach to running restaurants are problematic. *Christopher*, 132 S. Ct. at 2167. As such, this Court should not defer to the WHD's interpretation of the dual jobs regulation in the FOH.

**C. The WHD's 20% Rule is Unworkable**

Romero cites to a number of district court cases which recognized a dual jobs claim by denying motions to dismiss claims identical to Romero's claims. *See* Appellant's Opening Brief, pp. 16-17 at n. 6, and pp. 33-34. All of these cases rely on FOH § 30d00(e) or the *Fast* case (or both) in holding that the plaintiffs had properly pled minimum wage claims. None of these cases however discusses the practical effect of allowing claims liked Romero's to proceed.

In *Pellon v. Business Representation International, Inc.*, 528 F. Supp. 2d 1306, 1313 (S.D. Fla. 2007); ), aff'd, 291 Fed. Appx. 310 (11th Cir. 2008), the 11th Circuit rejected a task-based review of skycaps' work as unworkable. While Romero may attempt to differentiate *Pellon* because it involved skycaps, the analysis in *Pellon* is sound and applies here. In *Pellon,* plaintiffs were skycaps at Miam International Airport who argued that their employer was not allowed to take

a tip credit because they were required to perform duties other than assisting travelers with their luggage. The court found that skycaps were similar to servers. Like servers, the court found that skycaps' duties involved many duties that did not directly earn tips. "The duties that Plaintiffs have performed in this case are not those of another occupation, even if there is some overlap among tasks between different positions." *Pellon,* 528 F. Supp. 2d at 1313. The court properly focused its analysis on whether the employees at issue worked in a tipped occupation, and refused to engage in the unworkable minutia of analyzing each task and evaluating the amount of time performed in that task.

> However, a determination whether 20% (or any other amount) of a skycap's time is spent on nontipped duties is infeasible … Permitting Plaintiffs to scrutinize every day minute by minute, attempt to differentiate what qualifies as tipped activity and what does not, and adjust their wage accordingly would create an exception that would threaten to swallow every rule governing (and allowing) for tip credit for employers. First of all, ruling in that manner would present a discovery nightmare. Of greater concern is the fact that under the reasoning proffered by Plaintiffs, nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance or require them to maintain precise time logs accounting for every minute of their shifts.

*Id.* at 1313-14.

Ultimately, Romero's claim would put this Court in the position of trying to judge whether and when a server who takes thirty seconds to take a bag of trash from the dining area to the kitchen somehow ceases to be a server and instead becomes a non-tipped "maintenance" worker for those thirty seconds. It would

require this Court to evaluate exactly when washing dishes crosses the line from what is expressly authorized in the regulations to where it ceases to be tipped server work and becomes non-tipped "dishwasher" work. Likewise for evaluating occupational distinctions when a server takes 45 seconds to check whether the restroom has toilet paper, soap, and paper towels. In the end, this entire inquiry is a fool's errand.

Restaurants have for decades employed a team-oriented approach whereby many of the tasks in the restaurant overlap various positions, such that individuals in two, three, or more job categories might perform the same task at various points in the same workweek, or in the same shift, or even at the same time. No restaurant requires its tipped employees to clock in and out dozens or hundreds of times per day to register the transition from one type of task to another. The idea that Congress would impose such a monstrous record-keeping obligation on restaurants or their employees is ludicrous, as is the view that in enacting the tip credit provision in the FLSA Congress somehow intended to radically alter the job duties of millions of restaurant workers across the country or to put courts in the role of micro-managing every aspect of tipped employment in restaurants task-by-task.

Allowing Romero's claims to proceed invites exactly that kind of absurd result. If Romero is allowed to proceed with her claims, then the natural consequence is that restaurants will be forced either (1) to segregate all "non-

tipped duties," whatever that even means, and ensure that tipped employees never perform them; or (2) to maintain detailed records of exactly how tipped employees spend their time, task by task, in very short increments of time (often a minute or less) throughout a shift, for every single shift. That is arguably the only kind of record-keeping that could plausibly provide a defense to this kind of claim, and even there one would anticipate the common refrain in wage and hour litigation that the records are not accurate and thus that there is a fact issue for trial.

## CONCLUSION

Neither Congress, the Supreme Court, nor the Tenth Circuit Court of Appeals has recognized a minimum wage claim based on sub-regulation § 30d00(e). Allowing such a claim would lead to an unworkable application of the FLSA's tip credit provisions and undermine well-established and accepted service industry standards that have been in place since the 1960s.

This Court should not give deference to a policy having the net effect of allowing a server to do nothing during slow periods at a restaurant or require the restaurant to pay the server additional sums to help out around the restaurant. The law does not require that result. *Richardson*, 2015 WL 1279237 at *10. Romero received more than the minimum wage for every workweek she worked for HuHot. She performed one occupation, the server position, not two occupations. Accordingly, this Court should affirm the district court's dismissal of Counts 1 and 2 for failure to allege sufficient facts to support a cognizable legal claim.

Respectfully submitted this 25th day of July 2016.

LAW OFFICES OF GREGORY E.
GIVENS, P.C.

*/s/ Gregory E. Givens*
Gregory E. Givens, #41810
18 N. Sierra Madre Street, Suite E
Colorado Springs, CO 80903
Telephone: 719-291-4353
gegivens@hotmail.com
*Attorneys for Defendants-Appellees
Top-Tier Colorado LLC d/b/a HuHot
Mongolian Grill and Richard J.
Warwick*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

Pursuant to Federal Rule of Appellate Procedure 32(a), the undersigned certifies that this brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 9,547 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii). This certification is based on the Pages count processing system used in preparing this brief. This brief also complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Pages for the MacIntosh (version 2015) with 14-point Times New Roman in text, and all page margins are one inch.

Dated: July 25, 2016

*/s/ Gregory E. Givens*
Gregory E. Givens

**DIGITAL SUBMISSION AND ANTI-VIRUS CERTIFICATION FORM**

I certify that a copy of APPELLEES' BRIEF, as submitted electronically via the Court's ECF system, is an exact copy of the hard copy that is to be submitted to the Clerk, that all privacy redactions have been made pursuant to Tenth Circuit Local Rule 25.5 and Federal Rule of Appellate Procedure 25(a)(5), and that this brief has been scanned for viruses using SonicWall Gateway Antivirus Protection, version 5.8.1.8-57 on the PDF version and no viruses were found.

Dated: July 25, 2016

*/s/ Gregory E. Givens*
Gregory E. Givens

## CERTIFICATE OF SERVICE

I certify that on July 25, 2016, I electronically filed the foregoing brief with the Clerk of Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*/s/ Gregory E. Givens*
Gregory E. Givens