**CASE NO. 16-1057**

# In the United States Court Of Appeals for the Tenth Circuit

| | | |
|---|---|---|
| AARICA ROMERO, | ) | |
| | ) | |
| *Plaintiff – Appellant* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOP-TIER COLORADO, LLC and RICHARD J. WARWICK, individually, | ) | NO ORAL ARGUMENT REQUESTED |
| | ) | |
| *Defendants – Appellees* | ) | |

On Appeal from the United States District Court
For the District of Colorado
The Honorable Magistrate Judge Michael E. Hegarty
D.C. No. 1:15-cv-02101-MEH

## APPELLANT'S REPLY BRIEF

Clifford P. Bendau, II
The Bendau Law Firm
P.O. Box 97066
Phoenix, AZ 85060
(480) 382-5176
Cliffordbendau@bendaulaw.com

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 N. Michigan Ave., Ste. 1000
Chicago, IL 60601
(312) 332-6202
jsypulski@sbcglobal.net

Douglas M. Werman
Sarah J. Arendt
Werman Salas P.C.
77 W. Washington St., Suite 1402
Chicago, IL 60602
(312) 419-1008
dwerman@flsalaw.com
sarendt@flsalaw.com

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table Of Contents ..................... i

Table Of Authorities ..................... ii

Argument..................... 1

A. Defendants' *Klinghoffer* Argument Assumes That Tips Are Wages, But They Make No Effort To Challenge The Clear Authority That Tips Are Not Wages, And Thus That The Credit On Account Of Tips May Only Be Taken If The Requirements Of Sections 3(m) and 3(t) Are Met ..................... 3

1. Since Tips Are Not Wages, The Issue Is Whether Defendants Are Entitled To Take The Tip Credit ..................... 5

2. Other Than The Flawed Arizona Cases, Discussed In Plaintiff's Opening Brief, The *Klinghoffer* Rule Has Not Been Applied To Servers Paid Sub-Minimum, Tip-Credit Rates Of Pay ..................... 6

B. Defendants' "Top Up" Argument Has No Connection To Plaintiff's Dual Jobs Claim ..................... 8

C. Plaintiff's Complaint States A Dual Jobs Claim Based On Performance Of "Unrelated" Non-Tipped Work And "Related" Non-Tipped Work In Excess Of 20% Of Plaintiff's Work Time ..................... 9

1. The DOL Has Consistently Interpreted the Dual Jobs Regulation as Placing a 20 Percent Limit On "Related Duties" ..................... 13

2. Even Without Deference, the 20 Percent Rule Is A Reasonable Interpretation of the Dual Jobs Regulation ..................... 16

3. Defendants' 'Workability' Argument Is Overblown ..................... 17

CONCLUSION ..................... 19

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Auer v. Robbins*,
519 U.S. 452 (1997)........................................................................ 14, 15

*Barenboim v. Starbucks Corp.*,
698 F.3d 104 (2d Cir. 2012) ....................................................................6

*Chase Bank USA, N.A. v. McCoy*,
562 U.S. 195 (2011)..........................................................................14

*Christopher v. Smithkline Beecham Corp.*,
132 S.Ct. 2156 (2012)...................................................................... 14, 15

*Cooper v. Thomason*,
No. 05-1018-KI, 2007 WL 306311 (D. Ore. Jan. 26, 2007) ...........................7

*Cuevas v. Monroe St. City Club, Inc.*
752 F. Supp. 1405 (N.D. Ill. 1990)..................................................................6

*Doty v. Elias*,
733 F.2d 720 (10th Cir. 1984) ...............................................................4, 5

*Driver v. AppleIllinois, LLC*,
890 F. Supp. 2d 1008 (N.D. Ill. 2012)........................................................17

*Encino Motorcars, LLC v. Navarro*,
579 U.S. __, 2016 WL 3369424 (U.S. June 20, 2016)........................... 15, 16

*Fast v. Applebee's Int'l, Inc.*,
638 F.3d 872 (8th Cir. 2011) ..........................................................................13

*Fast v. Applebee's Int'l, Inc.*,
No. 06-4146-CV-C-NKL, 2010 U.S. Dist. LEXIS 19571 (W.D. Mo. Mar. 4, 2010) ............................................................................................ 14, 17

*Hudson v. FAA*,
192 F.3d 1031 (D.C.Cir.1999)......................................................................16

*Irvine v. Destination Wild Dunes Mgmt., Inc.*,
106 F. Supp. 3d 729 (D.S.C. 2015) ...................................................... *passim*

*McLamb v. High 5 Hosp.*,
No. 16-00039 GMS, 2016 WL 3751946 (D. Del. July 12, 2016)...... 4, 13, 15

*Montijo v. Romulus, Inc.*,
Nos. Cv-14-264-PHX-SMM,CV-14-265-PHX-SMM, CV-14-464-PHX-SMM, 2015 WL 1470128 (D. Ariz. Mar. 30, 2015) .......................................1

*Mullins Coal Co. of Virginia v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*,
484 U.S. 135 (1987)..........................................................................13

*Pellon v. Bus. Representation Int'l, Inc.*,
528 F. Supp. 2d 1306 (S.D. Fla. 2007)...........................................18

*Perez v. Mortgage Bankers Assoc.*,
135 S. Ct. 1199 (2015).....................................................................16

*Schaefer v. Walker Bros. Enters., Inc.*,
No. 15-1058, 2016 WL 3874171 (7th Cir. July 15, 2016)..................... 11, 17

*U.S. Dept. of Labor v. Cole Enterprises*
62 F.3d 775 (6th Cir. 1995) ...............................................................7

*U.S. v. Klinghoffer Bros Realty Corp.*
285 F.2d 487 (2d Cir. 1960) ................................................... *passim*

*Williams v. Am. Blue Ribbon Holdings, LLC*,
No 16-15118, ECF No. 17-1 (July 13, 2016)...............................................14

**STATUTES, REGULATIONS AND INTERPRETIVE GUIDANCE**

29 C.F.R. §531.51 .................................................................................9

29 C.F.R. §531.52 .................................................................................3

29 C.F.R. §531.55(a).............................................................................6

29 C.F.R. §531.55(b) ........................................................................................6

29 C.F.R. §531.56(e)........................................................................................ *passim*

29 C.F.R. §531.59(b) ........................................................................................9

29 U.S.C. § 201 ........................................................................................ *passim*

29 U.S.C. §203(m) ........................................................................................ 3, 4, 5

29 U.S.C. §203(t) ........................................................................................3, 4

29 U.S.C. §206........................................................................................6

Or. Rev. Stat. § 653.035(3) ........................................................................................7

United States Dep't Labor Field Operations Handbook,
Section 30d00(e)........................................................................................ 10, 12

# ARGUMENT

Defendants' chief argument is that *Klinghoffer* applies, but that only works if tips – sums presented by customers to servers – are wages paid by employers. Tips are not wages, and that argument fails.

On this point Defendants treat the Court to a multi-page string cite identifying cases applying *Klinghoffer*. Appellees' Br. at 5-7. But not one of those cases was a tip-credit case, so it comes as something of a *non sequitur* when Defendants conclude that the "same principle" applies in the tip-credit context. *Id.* at 8.

The only cases that support the application of *Klinghoffer* to tip-credit cases are those like *Montijo v. Romulus, Inc.*, Nos. Cv-14-264-PHX-SMM, CV-14-265-PHX-SMM, CV-14-464-PHX-SMM, 2015 WL 1470128 (D. Ariz. Mar. 30, 2015), which originate from the same Arizona district court judge, and which are presently on appeal to the Ninth Circuit. As the Department of Labor ("DOL") notes in its *amicus* brief, the *Klinghoffer* ruling has no application to tipped cases. DOL Br. at 14-16.

When Defendants' brief does turn to the true issues of this case, their arguments are no more convincing or consistent: Defendants seek to use DOL promulgations where they think those sources are helpful to their arguments, and at

the same time reject regulations and DOL Handbook provisions that expressly support Plaintiff's claims.

Defendants contend that there can be no dual job situation unless tipped employees are also performing "entirely distinct, non-overlapping jobs." Appellees' Br. at 16. But Defendants point to nothing – in the Act, the implementing regulation or the sub-regulatory sources – that limit a dual job to "distinct, non-overlapping jobs." Individuals employed as cooks, as janitors and as dishwashers are all paid at least full minimum wage: when tipped employees perform the duties of those back-of-the-house positions, they too must be paid full minimum wage. Any "overlap" between tipped positions and back-of-the-house jobs is as a result of restaurant employers seeking to save labor costs by requiring tipped employees to perform back-of-the-house duties.

Defendants' rejection of the 20 percent limitations on related duties is similarly free of legal support, despite the fact that that limitation has been accepted by many courts, including courts of appeals, and has been the consistent position of the DOL since 1988.

### A. Defendants' *Klinghoffer* Argument Assumes That Tips Are Wages, But They Make No Effort To Challenge The Clear Authority That Tips Are Not Wages, And Thus That The Credit On Account Of Tips May Only Be Taken If The Requirements Of Sections 3(m) And 3(t) Are Met

If Defendants' position is correct and tips are wages, an employee could never bring a minimum wage claim, even if that employee spent all his work time cooking food or washing dishes, if the tip-credit cash wage and tips equaled full minimum wage. And in that event, the requirements for taking the tip-credit identified in Sections 3(m) and (t) would have no effect.

Defendants' argument points up the central error made by the district court: misapplying *Klinghoffer* to a situation where an employer relies on tips to satisfy its minimum wage obligations. Under the *Klinghoffer* rule, "[t]he Congressional purpose [behind the FLSA] is accomplished so long as the total weekly *wage* paid *by an employer* meets the minimum weekly requirements of the statute…" *U.S. v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (emphasis added). Defendants and the district court assume, without analysis or argument, that the "total weekly *wage* paid *by an employer*" includes tips. Not true.

First, *Klinghoffer* spoke of wages "paid by an employer," not gifts presented by customers. *See* Appellant's Opening Br. at 22-23 (citing authorities); *see also* 29 C.F.R. § 531.52 (a "tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him.").

Second, tips are not wages because treating tips as wages would read out of existence the FLSA's prerequisites in Sections 3(m) and 3(t) for crediting tips against an employee's minimum wages. *See* Appellant's Opening Br. at 23; *see also McLamb v. High 5 Hosp.*, No. 16-00039 GMS, 2016 WL 3751946, at *3 (D. Del. July 12, 2016) (rejecting the *Klinghoffer* 'workweek' argument for this reason).

In response, Defendants completely ignore Plaintiff's first argument for why tips are not wages, and seem to misunderstand Plaintiff's second argument.

It is true that Plaintiff did not allege that Defendants paid Plaintiff less than the cash wage of $2.13 per hour, took a percentage of her tips for themselves, or failed to inform her of the tip credit provision. Appellees' Br. at 14. But that is not the point. If the Court were to conclude that tips are wages and apply *Klinghoffer* as Defendants advocate, employers could disregard all of the statutory prerequisites for taking a tip credit as long as the tips an employee receives and retains each workweek, averaged over the hours in each workweek, equal or exceed the minimum wage. Any interpretation of *Klinghoffer* that reads the FLSA's tip-credit provisions out of existence is untenable and foreclosed by controlling Tenth Circuit precedent. *See Doty v. Elias*, 733 F.2d 720, 724 (10th Cir. 1984).

In *Doty*, a steakhouse failed to pay servers any hourly wage and failed to inform them of the tip credit provisions of the FLSA. *Id.* at 722, 723. Even so, the employer argued that because the tips servers received equaled at least the full minimum hourly wage, the employer complied with the FLSA's minimum wage provisions. *Id.* at 724. The Tenth Circuit rejected this argument and concluded that it "does violence to the language of § 203(m) [of the FLSA] and would render much of that section superfluous." That same reasoning applies here.

### 1. Since Tips Are Not Wages, The Issue Is Whether Defendants Are Entitled To Take The Tip Credit

When, as in this case, an employee alleges that she was paid the sub-minimum, tip-credit wage rate for all time worked, including for time worked in dual jobs, the employee's total weekly wages will always fall below minimum wage, which fails the *Klinghoffer* rule. Thus, in a case alleging violation of the tip-credit provisions, the inquiry turns not on *Klinghoffer*, but on whether the employer was entitled to count tips toward its minimum wage obligation.

As a result, Defendants miss the point by string-citing cases applying *Klinghoffer's* "work week rule" to a "variety of payment plans." Appellees' Br. at 5-7. None of the cases cited by Defendants apply *Klinghoffer* to a case alleging violations of the FLSA's tip-credit provisions, as in this dual jobs case.

### 2. Other Than The Flawed Arizona Cases, Discussed In Plaintiff's Opening Brief, The *Klinghoffer* Rule Has Not Been Applied to Servers Paid Sub-Minimum, Tip-Credit Rates Of Pay

Defendants claim that the *Klinghoffer* rule and its "workweek standard for determining a minimum wage claim violation has been applied to servers." Appellees' Br. at 8-10. While Defendants cite three non-Arizona cases that purport to apply the *Klinghoffer* rule, none support Defendants' position.

The plaintiffs in *Cuevas v. Monroe St. City Club, Inc.* brought a claim for unpaid off-the-clock work, not a dual jobs claim. 752 F. Supp. 1405, 1416 (N.D. Ill. 1990). The court concluded, on summary judgment, that "although the wage agreements with [plaintiffs] were for $2.01 per hour (the minimum cash wage for tipped employees under Section 206 at the time), because the plaintiffs also received shares of a compulsory service charges billed to customers," the service charges were required to be included in the determination of minimum wages paid to employees (see 29 C.F.R. § 531.55(a), (b))." 752 F. Supp. at 1417, n. 18.

Unlike tips, however, compulsory service charges are *wages paid by the employer* and are included as part of the employee's regular rate for minimum wage purposes. *Barenboim v. Starbucks Corp.*, 698 F.3d 104, 112 (2d Cir. 2012) ("tips" as defined by the FLSA do not include service charges); 29 C.F.R. § 531.55(a), (b).

Similarly, *Cooper v. Thomason* is not a tip-credit case: Oregon state law forbids an employer from taking a credit for tips the employee receives. Or. Rev. Stat. § 653.035(3) (employers may not use any part of employee tips in determining minimum wage obligation). Instead, the plaintiff in *Cooper* alleged a minimum wage violation based on an improper tip pool. No. 05-1018-KI, 2007 WL 306311, at *1 (D. Ore. Jan. 26, 2007). As noted, the employer in *Cooper* could not take a tip credit against the plaintiff's wages. *Id*. Accordingly, the employer actually paid wages to plaintiff in excess of full minimum wage. *Id.* Given that fact, the *Klinghoffer* case would be applicable to the minimum wage claim.

If anything, the *Cooper* case is added support for the principle that tips are not wages under the FLSA. *Id.* *2 ("Wages and tips are distinguished under the wage and hour statutes." (citations omitted)).

Defendants' analysis of *U.S. Dept. of Labor v. Cole Enterprises* is similarly overstated. In *Cole Enterprises,* employees claimed that they were required to work up to thirty-minutes per day performing pre-shift and post-shift duties for which they were not compensated. 62 F.3d 775, 780 (6th Cir. 1995). The Sixth Circuit upheld the district court's finding, after a bench trial, of a minimum wage violation. *Id.* at 777.

The *Cole Enterprises* defendants contended that they had paid a higher cash

wage than was required, and thus that the plaintiffs were properly compensated even after the addition of the uncompensated time. *Id.*at 780. But the district court rejected that argument, finding that the defendants' wage payments, plus tips and a meal credit, equaled minimum wage only for the scheduled hours, but not all hours that the plaintiffs worked. *Id.* While the Sixth Circuit mentioned *Klinghoffer* and similar cases, there was no need for the court to take a view of the workweek analysis since the defendants' argument failed as a factual matter. *Id.*

The Sixth Circuit never suggested that the employer could use tips servers received to offset the servers' uncompensated work time. And contrary to Defendants' suggestion, the plaintiff never argued that the servers' uncompensated pre-shift and post-shift work was "unrelated" to their tipped occupation, or exceeded 20 percent of their time worked, and so there was no basis for the Sixth Circuit to opine on those issues.

**B. Defendants' "Top Up" Argument Has No Connection To Plaintiff's Dual Jobs Claim**

Defendants also argue that Plaintiff's Complaint fails to state a claim because if a tipped employee's cash wage, plus tips, fail to equal the full minimum wage, the FLSA requires that the employer "top up" the cash wage paid to ensure the employee is paid the full minimum wage for all time worked in the week. Appellees' Br. at 10-11. Defendants claim that *if* an employer makes up the difference between the full minimum wage and whatever insufficient amount an

employee received in tips, then *a fortiori* the employee cannot claim a minimum wage violation. Appellees' Br. at 11. Defendants are wrong.

Defendants cite only a portion of 29 C.F.R. § 531.59(b) to support their argument, Appellees' Br. at 11, but the first sentence of that regulation states, "[a]s indicated in § 531.51, the tip credit may be taken only for hours worked by the employee in an occupation in which the employee qualifies as a 'tipped employee.'" 29 C.F.R. § 531.59(b). Thus, even if an employer "topped up" the wages received by its employee to meet the minimum wage requirements – a "fact" not before the Court as part of Defendants' motion to dismiss – that employee would still state a minimum wage claim under the FLSA because she alleged that she was not working as a "tipped employee" and thus, the employer could not take the tip credit for that time.

### C. Plaintiff's Complaint States A Dual Jobs Claim Based On Performance Of "Unrelated" Non-Tipped Work And "Related" Non-Tipped Work In Excess Of 20% Of Plaintiff's Work Time

Plaintiff's Opening Brief explains in detail the legal framework for a minimum wage claim based on a tipped employee performing dual jobs. Appellant's Opening Br. at 13-15. Defendants dispute that framework by asserting that a dual jobs claim can only be made if the tipped job and non-tipped job are "entirely distinct, non-overlapping jobs." Appellees' Br. at 16. Further, Defendants argue that servers can be required to perform an *unlimited* amount of

"related" duties, far beyond the DOL's 20 percent limitation. *Id*. Defendants are wrong on both fronts.

The dual jobs regulation specifically addresses a scenario where an employee performs maintenance work and server work for the same employer. *See* 29 C.F.R. § 531.56(e). The regulation prohibits the employer from taking a tip credit against the employee's maintenance work while permitting the employer to take a tip credit against the employee's server work, if she earns sufficient tips. *Id.* The regulation does not allow the employer to take a tip credit against the employee's maintenance work because she performs that work during a shift where she also works as a server. *See* DOL Br. at 14-16 (the tip credit cannot be taken for time the employee spends performing work of a non-tipped occupation).

That is why Defendants are wrong in suggesting that Plaintiff failed to state a claim by not alleging that she spent "entire shifts" in the kitchen as a cook or washing dishes. Appellees' Br. at 22. And the dual jobs regulation equally forecloses Defendants' argument that a server can perform unlimited "side work." *Id.* at 16. The dual jobs regulation allows a server to spend "*part of her time*" performing certain "related duties." 29 C.F.R. § 531.56(e) (emphasis added). In its Field Operations Handbook ("Handbook"), the DOL has determined this amount of time to be 20 percent. DOL Field Operations Handbook, Ch. 30d00(e) (rev. June 30, 2000) *available at* http://www.dol.gov/whd/FOH/FOH_Ch30.pdf.

Defendants' argument ignores these temporal limitations on servers performing "related duties."

Under Defendants' all-or-nothing framework, a server could spend one hour of her shift cooking food in the back of the house, one hour washing dishes, one hour cleaning the restaurant, and one hour serving customers, and yet somehow still be employed in the occupation of "server" for the entire time because she performed all of these tasks while 'clocked in' as a server. As explained in Plaintiff's Opening Brief, such a formalistic definition of "occupation" is not consistent with the case law or applicable regulations because an employee's "occupation" is a function of the duties she performs, and not job title. Appellant's Opening Br. at 26-30. Indeed, it is impossible to speak of an "occupation" without speaking of the duties performed in that occupation, as Defendants' brief here establishes. Appellees' Br. at 16.

The work that Defendants regularly required Plaintiff to perform included: cleaning soft drink dispensers, taking out the trash, stocking ice, scrubbing walls, sweeping and mopping floors, cleaning booths, and breaking down and cleaning the expo line. (cite to complaint in record, ¶ 21-22). Cleaning machinery, scrubbing walls, and mopping floors – traditional janitorial work – is not "related" to Plaintiff's tipped duties. *See Schaefer v. Walker Bros. Ent., Inc.*, No. 15-1058, 2016 WL 3874171, at *3 (7th Cir. July 15, 2016) (recognizing that wiping down

burners and woodwork and dusting picture frames do not seem closely related to tipped work, but declining to resolve the issue based on the facts presented). Because Plaintiff alleged that Defendants required her to perform this work while paying her the tip credit rate, Appellant's App. at 11, ¶ 27, Plaintiff stated a minimum wage violation because she should have been paid the full minimum wage for this janitorial work. *See* 29 C.F.R. § 531.56(e).

But even if the Court finds that all of the duties Plaintiff performed were "related" to her tipped work, as Defendants concede (Appellees' Br. at 16), the dual jobs regulation specifically limits performance of "related" server duties to "part of [the] time" and "occasionally." 29 C.F.R. § 531.56(e). And the DOL's Handbook clarifies these ambiguous terms as 20 percent or less of an employee's time worked. Handbook, Ch. 30, § 30d00(e). Plaintiff alleges that Defendants "regularly and consistently" required her to perform "a substantial amount" of non-tipped work related to her tipped occupation "in excess of 20 percent of her regular workweek," including before the restaurant was open to customers, after it was closed to customers, and after being "cut" from serving customers. Appellant's App. at 9-10, ¶¶ 20, 23, 24.

Because Plaintiff alleges that this non-tipped work was performed more than "part of the time" or "occasionally," she states a dual jobs minimum wage violation under the Act.

### 1. The DOL Has Consistently Interpreted the Dual Jobs Regulation as Placing a 20 Percent Limit on "Related Duties"

Defendants' claim that the DOL only intermittently adhered to the 20 percent rule for the performance of related duties, Appellee's Br. at 24-25, is wildly exaggerated.

Except for a simultaneously released and withdrawn opinion letter in 2009, the DOL has consistently adhered to the 20 percent rule since 1988, when the DOL's Handbook first included the rule.[1] *See Irvine v. Destination Wild Dunes Mgmt., Inc.*, 106 F. Supp. 3d 729, 732-33 (recounting history of the rule); *McLamb*, 2016 WL 3751946, at *5 (rejecting arguments that DOL's 20 percent rule has been inconsistently applied).

If there was any doubt about the DOL's position on the 20 percent rule after 2009, the DOL reaffirmed its position in 2010 and then again in July 2016 by defending the rule in well-reasoned appellate briefs in the Eighth Circuit in *Fast v. Applebee's Int'l, Inc.*,[2] 638 F.3d 872, 877 (8th Cir. 2011) (referencing the brief),

---

[1] "A withdrawn ruling or interpretation, or the withdrawn portion of a ruling or interpretation, may not be relied upon as an official ruling or interpretation of the Administrator or the Wage and Hour Division for any purpose …" http://www.dol.gov/whd/opinion/opinion.htm. Thus, not only can the letter "not be relied upon" for any reason, including to create an inconsistency, but it goes without saying that an opinion letter cannot "fundamentally" alter agency regulation. *Mullins Coal Co. of Virginia v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor*, 484 U.S. 135, 170, (1987) (Marshall, J. dissenting).

[2] Based on the DOL's appellate brief in *Fast*, there can be no argument that the DOL's 2009 opinion letter on the "barback" position casts doubt on the 20 percent rule, as Defendants suggest. Appellees' Br. at 21.

available at https://www.dol.gov/sol/media/briefs/fast(A)-9-15-2010.htm#_ednref6 (last accessed June 23, 2016), and the Ninth Circuit in *Williams v. Am. Blue Ribbon Holdings, LLC*, No 16-15118, ECF No. 17-1 (July 13, 2016) (attached hereto as Attachment 1)[3] (detailing the DOL's consistent interpretation of the dual jobs regulation). And the DOL's careful interpretation of the dual jobs regulation in its appellate brief in both *Fast* and *Williams* are themselves entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 208 (2011). Further, the DOL has brought enforcement actions under the 20 percent rule in practice. *Fast v. Applebee's Int'l, Inc.,* No. 06-4146-CV-C-NKL, 2010 U.S. Dist. LEXIS 19571, at *18-19 (W.D. Mo. Mar. 4, 2010). The DOL's position in the *amicus* submission before this Court continues in that unbroken adherence. DOL Br. at 11-13.

Contrary to Defendants' argument, the Supreme Court's opinion in *Christopher v. Smithkline Beecham Corp.*, 132 S.Ct. 2156 (2012), provides no basis for failing to grant deference to the DOL's 20 percent rule.

In *Christopher*, the Supreme Court declined to grant *Auer* deference to the DOL's regulatory interpretation – that pharmaceutical sales representatives were

---

[3] The DOL's appellate brief in *Williams* was filed approximately one month after Appellant's Opening Brief and is not yet available online. For the Court's convenience, and in accordance with 10th Cir. R. 32.1(B), the DOL's brief is attached.

entitled to overtime pay – because the agency's interpretation would have imposed "potentially massive liability . . . for conduct that occurred well before that interpretation was announced." 132 S. Ct. 2156, 2165-67. Such a result would have amounted to "unfair surprise." *Id.* at 2167. That is not true here. Employers, like Defendant, have had access to the DOL's view on the 20 percent rule for decades, including the agency's robust support of that rule in *Fast* since 2010 (before the statute of limitations started running in this case), and thus there is no "unfair surprise."

Nor has the DOL offered shifting justifications for its 20 percent rule as the DOL did in support of its position on pharmaceutical sales representatives in *Christopher*. *Id.* at 2165-66. The court in *McLamb* specifically rejected the same argument that Defendants make here, and explained that "*Christopher* is consistent with the approach taken by *Fast*," which afforded *Auer* deference to the DOL's 20 percent sub-regulation. *McLamb,* 2016 WL 3751946, at *4. The court in *McLamb* further stated that the argument that "the Supreme Court's holding in *Christopher v. SmithKline* somehow ruptures this reasoning is unfounded." *Id.*[4]

---

[4] Although Defendants do not mention the case, the Supreme Court's recent decision in *Encino Motorcars, LLC v. Navarro,* 579 U.S. __, 2016 WL 3369424 (U.S. June 20, 2016), does not change the outcome. In *Encino*, the Court held that a "reasoned explanation" is required before an agency can reverse a long-held position, including through notice-and-comment rulemaking, when "significant reliance interests" have formed in the regulated community. 2016 WL 3369424, at *8 (June 20, 2016). While DOL's 2009 opinion letter departing from the 20% rule may have qualified as a reversal of the agency's long-held position, given that the DOL simultaneously released and withdrew that letter, *Irvine,* 106 F. Supp. 3d at

Accordingly, the DOL has maintained an unbroken adherence to the 20 percent rule since 1988. But even if the DOL's support had not been so robust, an agency may "promulgate freely [interpretive] rules – whether or not they are consistent with earlier interpretations" of the agency's regulations. *Perez v. Mortgage Bankers Assoc.*, 135 S. Ct. 1199, 1207 (2015); *see also Hudson v. FAA,* 192 F.3d 1031, 1035–36 (D.C.Cir.1999) (holding that an agency may change its policy statements as it sees fit without following Administrative Procedure Act notice and comment procedures).

**2. Even Without Deference, the 20 Percent Rule Is A Reasonable Interpretation of the Dual Jobs Regulation**

What is more, even if the DOL had never interpreted the ambiguous terms in the dual jobs regulation ("occasionally" and "part of [the] time"), Plaintiff could reasonably argue that by requiring her to perform non-tipped work for more than 20 percent of her work time (Appellant's App. at 9-11, ¶¶ 20, 23, 24, 26), Defendants violated the dual jobs regulation by requiring her to perform such work more than "part of her time" or "occasionally." *Irvine*, 106 F. Supp. 3d at 734 ("aside from any deference due to the agency's use of the twenty percent rule, such a standard would be a perfectly valid interpretation of the FLSA and § 531.56(e)").

---

729, means that restaurants could not have formed any "reliance interests," much less a significant one. As a result, withdrawal of the 2009 letter could not have triggered the "reasoned explanation" standard articulated by the Court in *Encino.*

### 3. Defendants' 'Workability' Argument Is Overblown

Nor is the 20 percent limitation of tipped employees performing related non-tipped job duties "unworkable." *See Fast,* 2010 U.S. Dist. LEXIS 19571, at *18-19 (defendant-restaurant's argument that the 20 percent rule is "impossible" to enforce undercut by defendant's earlier commitment to the DOL that it *was* enforcing the rule).

All employers must already "assign [employees] duties and assess completion of those duties," so it is no "real burden on an employer to require that they be aware of how employees are spending their time before reducing their wages by 71% [i.e., the tip credit amount]." *Irvine*, 106 F. Supp. 3d at 734. *Second*, if Defendants are worried about a situation where an employee may only spend "45 seconds to check whether the restroom has toilet paper, soap, and paper towels" (Appellees' Br. at 29) that concern is unfounded because under the FLSA, time worked that is *de minimis* is not compensable. *Schaefer v. Walker Bros. Enter., Inc.*, 2016 WL 3874171, at *3 ("We need not decide what to make of wiping the woodwork or dusting picture frames, because … [f]or all this record shows, the time servers spend dusting picture frames is negligible.").

But just as in *Driver*, "'a few seconds or minutes is not what this case is about." *Driver v. AppleIllinois, LLC,* 890 F. Supp. 2d 1008, 1032 (N.D. Ill. 2012). This case instead challenges the extensive non-tipped work performed by Plaintiff

and other tipped employees each shift. Appellant's App. at 10, ¶¶ 24-25. Discovery will confirm that Plaintiff and other tipped employees spent far more than 20 percent of their time –*hours* each shift – performing non-tipped work.

Defendants cite the district court's opinion in *Pellon* to support its manageability argument, even though consideration of the 20 percent rule was "unnecessary under [the] facts" presented in that case. *Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1313-14 (S.D. Fla. 2007). Critically, *Pellon* was decided at summary judgment, *id.* at 1308, and thus provides no support for dismissing Plaintiff's claims at the pleading stage. *See Irvine*, 106 F. Supp. 3d at 734.

Further, the feasibility or manageability concerns voiced by the *Pellon* court are irrelevant in this case. Here, the factual record will show that Plaintiff performed most of her non-tipped work either before or after serving customers, not in between serving them, and thus dividing her duties minute-by-minute will not be overly burdensome. And "[i]n any case, since employers in order to manage employees, must assign them duties and assess completion of those duties, it is not a real burden on an employer to require that they be aware of how employees are spending their time before reducing their wages by 71%." *Irvine*, 106 F. Supp. 3d at 734.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court reverse the district court's order dismissing Plaintiff's Complaint and remand for fact finding regarding the alleged violations.

Date: August 11, 2016

s/Douglas M. Werman

## CERTIFICATE OF TYPE-VOLUME COMPLIANCE

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

I, Douglas M. Werman, an attorney, hereby certify that this brief complies with the type and volume limitation of Rule 32(a)(7)(B), in that it contains 4,320 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii). This certification is based on the Microsoft Word count processing system used in preparing Plaintiff-Appellant's Reply Brief. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word (version 2013) in 14-point Times New Roman.

s/Douglas M. Werman

## CERTIFICATE OF DIGITAL SUBMISSION AND PRIVACY REDACTIONS

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.

I, Douglas M. Werman, an attorney, hereby certify that this brief complies with the privacy redaction requirements of Fed. R. App. P. 25(a)(5) as well as Fed. R. Civ. P. 5.2. This reply brief and the accompanying attachment do not contain social security numbers or tax identification numbers, birth dates, minors' names, or financial account numbers.

I further certify that a copy of the foregoing **APPELLANT'S REPLY BRIEF**, as submitted in digital form via the Court's ECF system, is an exact copy of the hard copy that is to be submitted to the Clerk and has been scanned for viruses with SonicWall Gateway Antivirus Protection, Version 5.8.1.8-57 and, according to the program, is free of viruses.

s/Douglas M. Werman

**CERTIFICATE OF SERVICE**

I hereby certify that on August 11, 2016, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/Douglas M. Werman

**CASE NO. 16-1057**

# In the United States Court Of Appeals for the Tenth Circuit

| | | |
|---|---|---|
| AARICA ROMERO, | ) | |
| | ) | |
| *Plaintiff – Appellant* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TOP-TIER COLORADO, LLC and RICHARD J. WARWICK, individually, | ) | NO ORAL ARGUMENT REQUESTED |
| | ) | |
| *Defendants – Appellees* | ) | |

On Appeal from the United States District Court
For the District of Colorado
The Honorable Magistrate Judge Michael E. Hegarty
D.C. No. 1:15-cv-02101-MEH

## ATTACHMENT 1 TO APPELLANT'S REPLY BRIEF

Clifford P. Bendau, II
The Bendau Law Firm
P.O. Box 97066
Phoenix, AZ 85060
(480) 382-5176
Cliffordbendau@bendaulaw.com

Jamie G. Sypulski
Law Office Jamie Golden Sypulski
150 N. Michigan Ave., Ste. 1000
Chicago, IL 60601
(312) 332-6202
jsypulski@sbcglobal.net

Douglas M. Werman
Sarah J. Arendt
Werman Salas P.C.
77 W. Washington St., Suite 1402
Chicago, IL 60602
(312) 419-1008
dwerman@flsalaw.com
sarendt@flsalaw.com

*Counsel for Plaintiff-Appellant*

**No. 16-15118**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALTO WILLIAMS,
Appellant,

v.

AMERICAN BLUE RIBBON HOLDINGS LLC,
Appellee.

**(*For Continuation of Captions See Inside Cover*)**

On Appeal from the United States District Court
for the District of Arizona, USDC No. 2:14-cv-01467-PHX-SMM

**BRIEF FOR THE SECRETARY OF LABOR AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS-APPELLANTS**

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

SARAH KAY MARCUS
Senior Attorney
U.S. Department of Labor
Office of the Solicitor, Room N-2716
200 Constitution Avenue, NW
Washington, D.C. 20210
(202) 693-5696

| | |
|---|---|
| ALEC MARSH,<br>Appellant,<br>v.<br>J. ALEXANDER'S LLC,<br>Appellee. | CASE NO. 15-15791<br><br>[Appeal from Case No.<br>2:14-cv-01038- PHX-SMM] |
| CRYSTAL SHEEHAN,<br>Appellant,<br>v.<br>ROMULUS INC.,<br>Appellee. | CASE NO. 15-15794<br><br>[Appeal from Case No.<br>2:14-cv-01464-PHX-SMM] |
| SILVIA ALARCON,<br>Appellant,<br>v.<br>ARRIBA ENTERPRISES INC.,<br>Appellee. | CASE NO. 15-16561<br><br>[Appeal from Case No.<br>2:14-cv-00465-PHX-SMM] |
| SAROSHA HOGAN, ET AL.,<br>Appellant,<br>v.<br>AMERICAN MULTI-CINEMA, INC.,<br>Appellee. | CASE NO. 15-16659<br><br>[Appeal from Case No.<br>2:14-cv-00051-PHX- SMM] |
| NATHAN LLANOS,<br>Appellant,<br>v.<br>P.F. CHANG'S CHINA BISTRO, INC.,<br>Appellee. | CASE NO. 16-15003<br><br>[Appeal from Case No.<br>2:14-cv-00261-PHX-SMM] |
| KRISTEN ROMERO,<br>Appellant,<br>v.<br>P.F. CHANG'S CHINA BISTRO, INC.,<br>Appellee. | CASE NO. 16-15004<br><br>[Appeal from Case No.<br>2:14-cv-00262-PHX-SMM] |
| ANDREW FIELDS,<br>Appellant,<br>v.<br>P.F. CHANG'S CHINA BISTRO, INC.,<br>Appellee. | CASE NO. 16-15005<br><br>[Appeal from Case No.<br>2:14-cv-00263-PHX-SMM] |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ... iii

INTEREST OF THE SECRETARY ... 1

ISSUE ... 2

STATEMENT ... 2

A. Facts ... 2

B. Procedural History ... 3

ARGUMENT ... 6

I. EMPLOYERS ARE PROHIBITED FROM TAKING A TIP CREDIT AS TO TIME AN EMPLOYEE SPENDS PERFORMING WORK UNRELATED TO A TIPPED OCCUPATION OR WORK RELATED TO A TIPPED OCCUPATION THAT DOES NOT GENERATE TIPS AND EXCEEDS 20 PERCENT OF THE EMPLOYEE'S WORK TIME ... 6

A. The FLSA permits employers to take a tip credit in certain circumstances and grants the Department broad authority to issue implementing regulations ... 6

B. The Department's dual jobs regulation and interpretation of that regulation limit the circumstances in which an employer may take a tip credit for time an employee spends performing work that does not produce tips ... 7

II. THE DISTRICT COURT ERRED BY DISMISSING WILLIAMS'S COMPLAINT BASED ON INAPPLICABLE CASELAW AND WITHOUT DEFERRING TO THE DEPARTMENT'S INTERPRETATIONS OF THE RELEVANT STATUTORY AND REGULATORY PROVISIONS ... 13

Page

A. *Klinghoffer* is not relevant to the issues raised in this case ..... 13

B. The Department's guidance addressing the issues raised in this case is controlling ........ 15

III. WILLIAMS'S COMPLAINT STATED CLAIMS OF FLSA VIOLATIONS SUFFICIENT TO SURVIVE A MOTION TO DISMISS ........ 26

CONCLUSION ........ 28

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

ADDENDUM: Wage and Hour Division, Opinion Letter WH-895 (Aug. 8, 1979) ........ A-1

Wage and Hour Division, Opinion Letter FLSA 2009-23 (dated Jan. 16, 2009, withdrawn Mar. 2, 2009) ........ A-2

# TABLE OF AUTHORITIES

Cases: Page

*Adair v. City of Kirkland*,
185 F.3d 1055 (9th Cir. 1999)....14

*Anderson v. Mt. Clemens Pottery Co.*,
328 U.S. 680 (1946)....26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).... 26, 27, 28

*Auer v. Robbins*,
519 U.S. 452 (1997).... 17, 18, 24

*Barcellona v. Tiffany English Pub, Inc.*,
597 F.2d 464 (5th Cir. 1979)....25

*Barnhart v. Walton*,
535 U.S. 212 (2002)....19

*Bassiri v. Xerox Corp.*,
463 F.3d 927 (9th Cir. 2006)....17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).... 26, 27, 28

*Belt v. EmCare, Inc.*,
444 F.3d 403 (5th Cir. 2006)....23

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council*,
467 U.S. 837 (1984).... 15, 21

*Christensen v. Harris Cty.*,
529 U.S. 576 (2000).... 3, 15, 23

*Christopher v. SmithKline Beecham Corp.*,
132 S. Ct. 2156 (2012).... 5, 25

Cases--continued: Page

*Driver v. AppleIllinois, LLC*,
739 F.3d 1073 (7th Cir. 2014)....................20

*Fast v. Applebee's International, Inc.*,
638 F.3d 872 (8th Cir. 2011).................... 18 & *passim*

*Grage v. N. States Power Co.-Minn.*,
813 F.3d 1051 (8th Cir. 2015)....................22

*Hensley v. MacMillan Bloedel Containers, Inc.*,
786 F.2d 353 (8th Cir. 1986)....................14

*In re Farmers Ins. Exch.*,
481 F.3d 1119 (9th Cir. 2007)....................17

*Klem v. Cty. of Santa Clara*,
208 F.3d 1085 (9th Cir. 2000)....................17

*Landers v. Quality Commc'ns, Inc.*,
771 F.3d 638 (9th Cir. 2014)....................27

*Long Island Care at Home, Ltd. v. Coke*,
551 U.S. 158 (2007)....................16

*Montano v. Montrose Rest. Assocs.*,
800 F.3d 186 (5th Cir. 2015)....................25

*Myers v. Copper Cellar Corp.*,
192 F.3d 546 (6th Cir. 1999)....................21

*Or. Rest. & Lodging Ass'n v. Perez* ("*ORLA*"),
816 F.3d 1080, 1083 (9th Cir. 2016), *petition for reh'g filed* (Apr. 6, 2016) (No. 13-35765).................... 6, 15, 16

*Pellon v. Bus. Representation Int'l, Inc.*,
291 F. App'x 310 (11th Cir. 2008) (unpublished), *aff'g* 528 F. Supp. 2d 1306 (S.D. Fla. 2007).................... 21, 22

Cases--continued: Page

*Perez v. Lorraine Enters., Inc.*,
769 F.3d 23 (1st Cir. 2014) ....................................................................25

*Price v. Stevedoring Servs. of Am., Inc.*,
697 F.3d 820 (9th Cir. 2012)....................................................................18

*Probert v. Family Centered Services, Inc.*,
651 F.3d 1007 (9th Cir. 2011)........................................................ 5, 23

*Roussell v. Brinker Int'l, Inc.*,
441 F. App'x 222 (5th Cir. 2011) (unpublished) ..................................21

*United States v. Home Concrete & Supply, LLC*,
132 S. Ct. 1836 (2012) ..........................................................................15

*United States v. Klinghoffer Bros. Realty Corp.*,
285 F.2d 487 (2d Cir. 1960).................................................. 3 & *passim*

*Webster v. Pub. Sch. Employees, Inc.*,
247 F.3d 910 (9th Cir. 2001)....................................................................18

Statutes:

Fair Labor Standards Act of 1937, as amended,
29 U.S.C. 201, *et seq.*:

Section 3(m), 29 U.S.C. 203(m)................................................. 1, 7, 16
Section 3(r)(2)(A), 29 U.S.C. 203(r)(2)(A).........................................23
Section 3(t), 29 U.S.C. 203(t).................................................. 7, 16, 19
Section 4, 29 U.S.C. 204 ..........................................................................1
Section 11(a), 29 U.S.C. 211(a) ...............................................................1
Section 13(c)(6), 29 U.S.C. 213(c)(6)....................................................19
Section 16(c), 29 U.S.C. 216(c) ...............................................................1
Section 17, 29 U.S.C. 217 .........................................................................1

Fair Labor Standards Amendments of 1966,
Pub. L. No. 89-601, 80 Stat. 830 (1966)............................... 6, 7, 15-16

Code of Federal Regulations: Page

29 C.F.R. 531.51-.60 ....................7
29 C.F.R. 531.56(e) .................... 4 & *passim*
29 C.F.R. Part 541 ....................22
29 C.F.R. 541.2....................22
29 C.F.R. 552.6(b) ....................19
29 C.F.R. 786.1....................19
29 C.F.R. 786.100....................19
29 C.F.R. 786.150....................19
29 C.F.R. 786.200....................19

Other Authorities:

32 Fed. Reg. 13,575 (Sept. 28, 1967).................... 7, 8, 16-17

Federal Rule of Appellate Procedure 29(a) ....................1

H.R. Rep. No. 93-913 (1970) ....................6

S. Rep. No. 89-1487 (Aug. 23, 1966)....................23

S. Rep. No. 93-690 (Feb. 22, 1974)....................7

U.S. Dep't of Labor,

Sec'y of Labor's Amicus Br., *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725, 10-1726) (filed Sept. 10, 2010), *available at* http://www.dol.gov/sol/media/briefs/fast(A)-9-15-2010.pdf ....................12

Wage and Hour Div.,

Field Operations Handbook,
Ch. 30, § 30d00 (Dec. 9, 1988), *available at* https://www.dol.gov/whd/FOH/FOH_Ch30.pdf ............10

§ 30d00(d) (Dec. 9, 1988) ....................11
§ 30d00(e) (Dec. 9, 1988).................... 5, 11, 20, 24
§ 30d00(e) (June 20, 2012).................... 12-13

Other Authorities--continued: Page

Opinion Letter WH-895
(Aug. 8, 1979).................................................8 & *passim*

Opinion Letter WH-502,
1980 WL 141336 (Mar. 28, 1980)...................5 & *passim*

Opinion Letter FLSA-854,
1985 WL 1259240 (Dec. 20, 1985).................5 & *passim*

Opinion Letter FLSA 2009-23
(dated Jan. 16, 2009, withdrawn Mar. 2, 2009)....5, 11, 25

**No. 16-15118**

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ALTO WILLIAMS,
Appellant,

v.

AMERICAN BLUE RIBBON HOLDINGS LLC,
Appellee.

**(*For Continuation of Captions See Inside Cover*)**

On Appeal from the United States District Court
for the District of Arizona, USDC No. 2:14-cv-01467

**BRIEF FOR THE SECRETARY OF LABOR AS *AMICUS CURIAE***
**IN SUPPORT OF PLAINTIFFS-APPELLANTS**

## INTEREST OF THE SECRETARY

Pursuant to Federal Rule of Appellate Procedure 29(a), the Secretary of Labor ("Secretary") submits this brief as *amicus curiae*. The Secretary has a substantial interest in the proper judicial interpretation of the Fair Labor Standards Act ("FLSA") because he administers and enforces the statute, *see* 29 U.S.C. 204, 211(a), 216(c), 217. Appropriate application of the FLSA's tip credit provision, 29 U.S.C. 203(m), is crucial to achieving FLSA compliance with respect to employees who receive tips.

## ISSUE

Whether the district court erred by dismissing complaints filed by employees who alleged that their employers credited tips received from customers toward the FLSA minimum wages due for all of the employees' hours worked even though the employees sometimes performed tasks unrelated to their tipped occupation and spent more than 20 percent of their work time performing tasks that were related to their tipped occupation but did not produce tips, where the court relied on case law from outside the tip credit context rather than the Secretary's longstanding regulation and interpretation of that regulation requiring that employers directly pay the full minimum wage for such non-tipped time.

## STATEMENT

### A. Facts

Alto Williams worked as a server at the Village Inn in Phoenix, Arizona. Complaint, *Williams v. Am. Blue Ribbons Holdings LLC*, No. 2:14-cv-01467 (D. Ariz. June 27, 2014) ¶¶ 8-9.[1] In addition to serving food to customers, work for which he received tips, Williams performed tasks that did not generate tips. Some of this non-tipped work was unrelated to his occupation as a server, such as

[1] Although the appeal of Williams's case has been consolidated with the seven other above-captioned cases, in the interest of simplicity, this amicus brief only addresses the facts alleged in Williams's complaint. The Secretary believes the arguments presented in this brief apply to, and the same law and reasoning should govern the outcome of, all eight cases.

"scrubbing walls," "cleaning seats," and "cleaning gum from the bottom of tables." *Id.* ¶¶ 35-36. He also performed non-tipped work, such as "refilling salt and pepper shakers," "brewing tea [and] coffee," and "rolling silverware," that was related to being a server; Williams spent more than 20 percent of his work time on such tasks. *Id.* ¶¶ 23-25. Village Inn took a tip credit—that is, directly paid Williams an amount below the minimum wage and counted tips he received from customers to make up the difference—for all of his hours worked, including those during which he performed non-tipped duties. *Id.* ¶¶ 22-23, 34-35.

**B. Procedural History**

In June 2014, Williams filed suit in the U.S. District Court for the District of Arizona alleging that Village Inn had violated the FLSA by (1) failing to pay him the minimum wage for his hours spent performing work unrelated to his tipped occupation and (2) failing to pay him the minimum wage for hours spent performing non-tipped work related to his tipped occupation because such time was in excess of 20 percent of his total work hours. *See generally* Compl.

Village Inn filed a motion to dismiss Williams's complaint, which the district court granted in January 2016. *Williams*, slip op. at 10 (D. Ariz. Jan. 4, 2016). The court first stated that "an employment practice does not violate the FLSA unless the FLSA prohibits it." *Id.* at 4 (citing *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000)). Then, relying on *United States v. Klinghoffer Bros.*

*Realty Corp.*, 285 F.2d 487 (2d Cir. 1960), the court explained that "whether [an employee] is able to state a FLSA minimum wage violation depends on the total pay for the workweek divided by the total number of hours worked in that workweek," rather than on the pay for any particular hour. Slip op. at 5. And because, the court reasoned, Williams had made no allegation that his average hourly wage *including tips* fell below the minimum wage, his complaint failed to state a proper claim for relief. *Id.*

The court proceeded to reject Williams's theory that an FLSA regulation regarding non-tipped duties performed by a tipped employee, 29 C.F.R. 531.56(e) (the "dual jobs regulation"), and the Department of Labor's ("Department") interpretation of that regulation, precluded dismissal of the case. Slip op. at 5-6. The court stated that the dual jobs regulation was "not ambiguous," explaining that it only applied if "an employee perform[s] two or more entirely distinct, non-overlapping jobs." *Id.* at 6-7. Here, the court stated, Williams "was engaged in one occupation, server," so his claim regarding time spent performing duties unrelated to his tipped occupation necessarily failed. *Id.* at 7. Moreover, the court understood the regulation to mean that "the server occupation inherently includes side work" as to which the tip credit is permissible even though the tasks do not generate tips, and therefore Williams's claim regarding time spent performing non-tipped work related to his job as a server failed as well. *Id.*

The court also concluded that even if the dual jobs regulation were ambiguous, the interpretation of it in the Field Operations Handbook ("FOH") issued by the Department's Wage and Hour Division ("WHD")—which provides that if an employee spends more than 20 percent of her hours worked in a workweek performing non-tipped duties that are related to her tipped occupation, her employer may not take a tip credit for the time spent performing such work—was not entitled to deference for several reasons. Slip op. at 7 (citing FOH § 30d00(e)). First, the Ninth Circuit had held in *Probert v. Family Centered Services, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011), that the FOH is not "a proper source of interpretive guidance." Slip op. at 7. Second, the court viewed the Department's other guidance regarding non-tipped work as "inconsistent[]," and such inconsistency rendered the Department's position unpersuasive. *Id.* at 8 (citing WHD Opinion Letter WH-502, 1980 WL 141336 (Mar. 28, 1980); WHD Opinion Letter FLSA-854, 1985 WL 1259240 (Dec. 20, 1985); WHD Opinion Letter FLSA 2009-23 (dated Jan. 16, 2009, withdrawn Mar. 2, 2009); *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166-67 (2012)). Third, according to the district court, the FOH provision "arbitrarily adds additional requirements" to the dual jobs regulation because the 20 percent limitation obligates employers to track tipped employees' duties closely and directly pay the full minimum wage for certain time, burdens that are "unworkable and inappropriate." Slip op. at 8-9.

Williams appealed the district court's opinion.

## ARGUMENT

### I. EMPLOYERS ARE PROHIBITED FROM TAKING A TIP CREDIT AS TO TIME AN EMPLOYEE SPENDS PERFORMING WORK UNRELATED TO A TIPPED OCCUPATION OR WORK RELATED TO A TIPPED OCCUPATION THAT DOES NOT GENERATE TIPS AND EXCEEDS 20 PERCENT OF THE EMPLOYEE'S WORK TIME

#### A. The FLSA permits employers to take a tip credit in certain circumstances and grants the Department broad authority to issue implementing regulations.

The FLSA "provide[s] 'greater dignity and security and economic freedom for millions of American workers'" by requiring employers to pay employees at least the minimum wage. *Or. Rest. & Lodging Ass'n v. Perez* ("*ORLA*"), 816 F.3d 1080, 1083 (9th Cir. 2016) (quoting H.R. Rep. No. 93-913, at 6 (1974)), *petition for reh'g filed* (Apr. 6, 2016) (No. 13-35765).

In 1966, Congress amended the FLSA to apply to restaurants and hotels; at the same time, it added a provision permitting employers to count tips employees receive from customers as a partial credit toward the minimum wages required by the Act. Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, §§ 101, 201, 80 Stat. 830, 830, 833 (1966). It also authorized the Secretary "to promulgate necessary rules, regulations, or orders with regard to the amendments made by this Act." *Id.* § 602, 80 Stat. at 844.

Section 3(m) of the FLSA, 29 U.S.C. 203(m), still allows an employer to take a tip credit toward the required minimum wage provided the employer complies with certain requirements;[2] more specifically, an employer of a "tipped employee" is permitted to directly pay the employee as little as $2.13 an hour, using tips from customers to reach the federal minimum wage of $7.25. *Id.* Section 3(t) of the Act defines "tipped employee" as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(t). The legislative history of the FLSA indicates that Congress contemplated that, generally, employees such as "waiters," "waitresses," and "service bartenders" would be tipped employees, whereas "janitors," "dishwashers," and "chefs" would not. S. Rep. No. 93-690, at 43 (Feb. 22, 1974).

**B. The Department's dual jobs regulation and interpretation of that regulation limit the circumstances in which an employer may take a tip credit for time an employee spends performing work that does not produce tips.**

*Dual jobs regulation.* In 1967, the Department promulgated regulations implementing the 1966 FLSA amendments. *See* Final Rule, 32 Fed. Reg. 13,575 (Sept. 28, 1967). One of the new regulatory provisions explained that if "an employee is employed in a dual job, as for example, where a maintenance man in a

[2] The conditions an employer must meet to properly take advantage of the tip credit are specified in the statute, *see* 29 U.S.C. 203(m), and relevant regulations, *see* 29 C.F.R. 531.51-.60. Williams has not argued that Village Inn failed to meet these threshold requirements as to his tipped work.

hotel also serves as a waiter," the employee "is a tipped employee only with respect to his employment as a waiter," and "no tip credit can be taken for his hours of employment in his occupation as a maintenance man." *Id.* at 13,680-81 (codified at 29 C.F.R. 531.56(e)). The regulation went on to explain that the dual jobs situation "is distinguishable from that of a waitress who spends *part of her time* cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses." 29 C.F.R. 531.56(e) (emphasis added). Those types of "related duties in an occupation that is a tipped occupation," the regulation provides, "need not by themselves be directed toward producing tips." *Id.*

*Opinion Letters*. Since 1967, the Department has issued guidance interpreting the dual jobs regulation. In a 1979 opinion letter, the Department considered whether a restaurant-employer could take a tip credit for time waitresses spent preparing vegetables for use in the salad bar. *See* WHD Opinion Letter FLSA-895 (Aug. 8, 1979) ("1979 Opinion Letter") (attached as addendum). Citing the dual jobs regulation and the legislative history distinguishing between tipped occupations, such as waitress, and non-tipped occupations, such as chef, the Department concluded that "salad preparation activities are essentially the activities performed by chefs," and therefore "no tip credit may be taken for the time spent in preparing vegetables for the salad bar." *Id.*

A 1980 opinion letter addressed a situation in which tipped restaurant servers "clean the salad bar, place the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables (including filling cheese, salt and pepper shakers) and vacuum the dining room carpet." WHD Opinion Letter WH-502, 1980 WL 141336 (Mar. 28, 1980) ("1980 Opinion Letter"). The Department reiterated language from the dual jobs regulation distinguishing between employees who spend "part of [their] time" performing "related duties in an occupation that is a tipped occupation" that do not produce tips and "where there is a clear dividing line between the types of duties performed by a tipped employee, such as between maintenance duties and waitress duties." *Id.* Because in the circumstance presented the clean-up duties were "assigned generally to the waitress/waiter staff," the Department found them to be related to the employees' tipped occupation. The letter suggested, however, that the employer would not be permitted to take the tip credit if "specific employees were routinely assigned, for example, maintenance-type work such as floor vacuuming." *Id.*

In 1985, the Department issued an opinion letter addressing non-tipped duties both unrelated and related to the tipped occupation of server. *See* WHD Opinion Letter FLSA-854, 1985 WL 1259240 (Dec. 20, 1985) ("1985 Opinion Letter"). First, the letter concluded (as had the 1979 letter) that "salad preparation activities are essentially the activities performed by chefs," not servers, and

therefore "no tip credit may be taken for the time spent in preparing vegetables for the salad bar." *Id.* Second, the letter explained (building on statements in the 1980 letter) that although a "tip credit could be taken for non-salad bar preparatory work or after-hours clean-up if such duties are incidental to the [waiter] or waitress regular duties and are assigned generally to the waiter/waitress staff," if "specific employees are routinely assigned to maintenance-type work or … tipped employees spend a substantial amount of time in performing general preparation work or maintenance, we would not approve a tip credit for hours spent in such activities." *Id.* Under the circumstances described by the employer seeking an opinion—specifically, "one waiter or waitress is assigned to perform … preparatory activities," including setting tables and ensuring that restaurant supplies are stocked, and those activities "constitute[] 30% to 40% of the employee's workday"—a tip credit was not permissible as to the time the employee spent performing those activities. *Id.*

*FOH*. In 1988, the Department distilled and refined its existing guidance interpreting the dual jobs regulation in the section of the FOH—its comprehensive operations manual for Wage and Hour Investigators—addressing the tip credit. *See* FOH § 30d00 (Dec. 9, 1988), *available at* http://www.dol.gov/whd/FOH/FOH_Ch30.pdf. First, the FOH affirmed that an

employer of an employee with "dual jobs" may only take a tip credit "for the hours spent in the tipped occupation." FOH § 30d00(d).

Second, it explained that an employer may take a tip credit for duties related to an employee's tipped occupation that do not produce tips provided that such duties "are incidental to the regular duties of the [tipped employee]" and "are generally assigned to the [tipped employees]." FOH § 30d00(e). It further noted that a tip credit for time spent performing related, non-tipped duties would *not* be permitted if "specific employees are routinely assigned to maintenance" or "tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance." *Id.* This statement, like the opinion letters from which it is derived, and in particular the 20 percent tolerance for related, non-tipped duties, arises from the regulation's reference to an employee spending "part of her time" on such duties; that language indicates that there is some limit on how much time an employee can spend performing work that does not generate tips and still receive only $2.13 per hour from her employer for all hours worked.[3]

*Amicus brief.* In 2010, in an amicus brief filed in the Eighth Circuit, the Secretary reiterated his interpretation that if non-tipped duties related to a tipped

---

[3] A January 2009 opinion letter rescinded the 20 percent limitation on related, non-tipped work, but that letter was withdrawn shortly thereafter, in March 2009. WHD Opinion Letter FLSA 2009-23 (dated Jan. 16, 2009, withdrawn Mar. 2, 2009) ("2009 Opinion Letter") (attached as addendum).

occupation exceed 20 percent of an employee's time in the tipped occupation in a workweek, the employer may not take a tip credit for that time. *See* Sec'y of Labor's Amicus Br., *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725, 10-1726) (filed Sept. 10, 2010), *available at* http://www.dol.gov/sol/media/briefs/fast(A)-9-15-2010.pdf.[4]

---

[4] In 2012, the Wage and Hour Division circulated to its investigators a revised dual jobs provision of the FOH, which provides:

(1) When an individual is employed in a tipped occupation and a non-tipped occupation – for example, as a server and janitor (dual jobs) -- the tip credit is available only for the hours spent in the tipped occupation, provided such employee customarily and regularly receives more than $30 a month in tips. (Rev. 563, 12/9/88) 29 CFR 531.56(e).

(2) 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee, and occasionally washes dishes or glasses. (Rev. 563, 12/9/88)

(3) However, where the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance. (Rev. 563, 12/9/88)

(4) Likewise, an employer may not take a tip credit for the time that a tipped employee spends on work that is not related to the tipped occupation. For example, maintenance work (e.g., cleaning bathrooms and washing windows) are not related to the tipped occupation of a server; such jobs are

## II. THE DISTRICT COURT ERRED BY DISMISSING WILLIAMS'S COMPLAINT BASED ON INAPPLICABLE CASELAW AND WITHOUT DEFERRING TO THE DEPARTMENT'S INTERPRETATIONS OF THE RELEVANT STATUTORY AND REGULATORY PROVISIONS

### A. *Klinghoffer* is not relevant to the issues raised in this case.

The district court erred by dismissing Williams's complaint based on the principle announced in *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487 (2d Cir. 1960). Slip op. at 5. In *Klinghoffer*, guards who worked at their employer's building were also made to work for an affiliated company without additional pay. 285 F.2d at 489-90. The guards alleged that the arrangement violated the FLSA's minimum wage requirement because they were paid nothing—that is, less than the minimum wage—for the extra hours. *See id.* The Second Circuit rejected their claim, reasoning that based on the wages paid for the originally scheduled hours, which exceeded the minimum wage, "the total wage paid to each guard … during any given week … divided by the total time he worked that week" results in an "average hourly wage [that] exceeds [the minimum wage]." *Id.* at 490. This and other circuits have adopted *Klinghoffer*'s

---

> non-tipped occupations. In this case, the employee is effectively employed in dual jobs.

FOH § 30d00(e) (June 20, 2012). This language articulates the Department's interpretation of the dual jobs regulation more clearly than the 1988 version of the provision, but it makes no substantive change to that interpretation. The language in the 2012 version of the provision has not yet been incorporated into the public FOH, that is, it is not available on the Wage and Hour Division's web site.

reasoning in cases involving similar circumstances. *See, e.g.*, *Adair v. City of Kirkland*, 185 F.3d 1055, 1063 (9th Cir. 1999) (explaining that police officers who were not paid for time spent in ten-minute briefings had not suffered FLSA minimum wage violations because "their salary, when averaged across their total time worked, still [paid] them above minimum wage" (citing *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 354, 357 (8th Cir. 1986))); *Hensley*, 786 F.2d at 357 (holding that a truck driver who did not receive pay for "time spent on inspections and paperwork" had not suffered an FLSA minimum wage violation because based on his pay for driving time, he received compensation each week that exceeded the minimum hourly wage rate even taking into account his uncompensated work time (citing, *inter alia*, *Klinghoffer*, 285 F.2d at 490)).

Williams's claims arise in a different context. The question presented in this case is whether Village Inn can properly treat Williams as a tipped employee for every working hour or must instead directly pay the full minimum wage for some portions of time. In other words, the court should have considered whether, as to Williams's time performing duties that did not generate tips, the tips he received from customers were properly considered part of his compensation or instead Village Inn violated the FLSA by paying him less than $7.25 per hour for that time. *Klinghoffer*, which addresses the averaging of compensation across a

workweek to meet minimum wage requirements, does not have any bearing on the issue of which hours and for what tasks an employer can make use of the tip credit. This case presents the distinct issue of whether an employer has met the requirements for taking a tip credit.[5]

**B. The Department's guidance addressing the issues raised in this case is controlling.**

The district court erred by concluding that the dual jobs regulation was not relevant in this case and that the FOH interpretation of that regulation was not entitled to deference.

1. The Department's dual jobs regulation, 29 C.F.R. 531.56(e), is entitled to deference under *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837 (1984). The 1966 FLSA amendments authorize the Secretary "to promulgate necessary rules, regulations, or orders with regard to the amendments made by this

---

[5] Similarly, a pronouncement that under *Christensen v. Harris County*, 529 U.S. 576 (2000), Williams's complaint does not allege a violation of the FLSA and therefore does not state a claim for relief, slip op. at 4, erroneously sidesteps the issues presented in these cases. *Christensen* held that because the FLSA does not prohibit a public employer from requiring employees to use their compensatory time and the Department had not issued a regulation addressing the issue, the employer had not violated the FLSA by imposing such a requirement. *See* 529 U.S. at 585, 587-88. It does not detract from the Department's rulemaking authority, *see ORLA*, 816 F.3d at 1087-89 (affirming that where the FLSA does not prohibit conduct because it is silent, the Department has "'gap-filling power'" (quoting *United States v. Home Concrete & Supply, LLC*, 132 S. Ct. 1836, 1843 (2012))); address any issue related to the tip credit; or in any other way suggest that Williams's claims, which are based on statutory requirements, regulatory text, and the Department's guidance, are not properly pled.

Act." Pub. L. No. 89-601, § 602, 80 Stat. at 844. Such a broad grant of authority plainly "provides the Department with the power to fill … gaps through rules and regulations." *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 165 (2007) (interpreting effectively identical authorizing language in amendments made to the FLSA in 1974).

Under *Chevron*, a court first considers whether the relevant statutory text "is silent or ambiguous with respect to the specific issue," and if it is, then accords the agency's regulation "'controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute.'" *ORLA*, 816 F.3d at 1086 (quoting *Chevron*, 467 U.S. at 843-44).

Here, the FLSA defines a "tipped employee" as to whom a tip credit can be permissible as "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. 203(m), (t). But Congress did not define "engaged in an occupation" or otherwise address circumstances in which an employee who receives tips for some of her work also performs duties for which she does not receive tips. The Department filled that gap by promulgating, by notice-and-comment rulemaking, the dual jobs regulation to explain that if an employee performs some duties that constitute a tipped job and other duties that constitute a non-tipped job, her employer may only take the tip credit for time she spends performing the tipped occupation. *See* 32 Fed. Reg.

13,575, 13,580-81; 29 C.F.R. 531.56(e). The regulation distinguishes dual jobs situations (involving non-tipped duties *unrelated* to the tipped occupation) from circumstances in which an employee spends "part of her time" performing duties *related* to the tipped occupation that do not generate tips, thereby allowing an employer to take a tip credit even if an employee spends a portion of her time on certain non-tipped duties. *Id.* The regulation is consistent with the statute, which permits employers to take a tip credit only with respect to tipped occupations, and is reasonable.

2. The Department's interpretation of the dual jobs regulation is in turn entitled to deference under *Auer v. Robbins*, 519 U.S. 452 (1997). When the Department interprets its own regulations, it is entitled to a "high degree of deference." *Klem v. Cty. of Santa Clara*, 208 F.3d 1085, 1092-93 (9th Cir. 2000). Specifically, "where an agency interprets its own regulation, even if through an informal process, its interpretation of an ambiguous regulation is controlling under *Auer* unless 'plainly erroneous or inconsistent with the regulation.'" *Bassiri v. Xerox Corp.*, 463 F.3d 927, 930 (9th Cir. 2006) (quoting *Auer*, 519 U.S. at 461).

Opinion letters, FOH provisions, and amicus briefs have been among the Department's tools for issuing interpretations of regulations to which *Auer* deference is due. *See, e.g., In re Farmers Ins. Exch.*, 481 F.3d 1119, 1129 (9th Cir. 2007) ("We must give deference to the DOL's interpretation of its own regulations

through, for example, Opinion Letters." (citing *Webster v. Pub. Sch. Emps., Inc.*, 247 F.3d 910, 914 n.2 (9th Cir. 2001))); *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880-81 (8th Cir. 2011) (deferring, as explained below, to the FOH provision at issue here); *Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 828 (9th Cir. 2012) (explaining that *Auer* applies to interpretations advanced in amicus briefs).

In this case, the interpretations set forth in opinion letters, the FOH, and the Secretary's briefs filed in 2010 and in this case are consistent with the dual jobs regulation. In particular, they provide detail not offered in the regulation itself about the types of duties so unrelated to the tipped occupation that a dual job situation exists, such as by concluding that salad preparation is a duty of a non-tipped chef rather than a tipped server. *See* 1979 Opinion Letter; 1985 Opinion Letter. They also elaborate on the meaning of the regulation's reference to "related duties in … a tipped occupation" that are non-tipped, such as by concluding that employers may take a tip credit for time spent performing clean-up tasks generally assigned to wait staff. *See* 1980 Opinion Letter. And finally, they interpret the regulation's statement that tips may be credited towards wages for related, non-tipped duties when such duties are performed "part of [the] time," first by concluding that an employer of an employee who spent 30 to 40 percent of her workday on such duties was precluded from taking the tip credit for that time (without specifying whether a smaller percentage of time would lead to the same

result), *see* 1985 Opinion Letter, and then by setting out the 20 percent tolerance in the FOH and amicus briefs.[6]

3. Other courts have adopted the positions the Department expressed in the dual jobs regulation, the FOH, and the 2010 amicus brief. Most notably, in *Fast v. Applebee's International, Inc.*, 638 F.3d 872 (8th Cir. 2011), the Eighth Circuit explicitly deferred to the 20 percent tolerance expressed in the FOH. The court first explained that the dual jobs regulation, which the parties agreed was entitled to *Chevron* deference, appropriately interprets section 3(t) of the FLSA, which "does not define when an employee is 'engaged in an occupation.'" *Id.* at 877, 879 (citing *Barnhart v. Walton*, 535 U.S. 212, 218 (2002)). The opinion letters and FOH provision, in turn, give meaning to the terms "occasionally" and "part of [the] time" in the dual jobs regulation, which "is itself ambiguous" but plainly consistent

[6] The Department's interpretation of "part of [an employee's] time" in the dual jobs regulation to mean no more than 20 percent of an employee's hours worked in a workweek is both reasonable and consistent with various other FLSA provisions, interpretations, and enforcement positions setting a 20 percent tolerance for work that is incidental to but distinct from the type of work to which an exemption applies. *See, e.g.*, 29 U.S.C. 213(c)(6) (permitting 17-year-olds to drive under certain conditions, including that the driving be "occasional and incidental," and defining "occasional and incidental" to, *inter alia*, mean "no more than 20 percent of an employee's worktime in any workweek"); 29 C.F.R. 552.6(b) (defining "companionship services" that are exempt from FLSA requirements to include "care" only if such "care … does not exceed 20 percent of the total hours worked per person and per workweek"); 29 C.F.R. 786.100, 786.150, 786.1, 786.200 (permitting employers to claim exemptions for switchboard operators, rail or air carriers, and drivers in the taxicab business unless different, nonexempt work "occupies more than 20 percent of the time worked by the employee during the workweek").

with some "temporal limitation" on an employee's related, non-tipped duties. *Id.* at 879-80. The 20 percent limitation was therefore entitled to controlling deference under *Auer*, and the Eighth Circuit affirmed the district court's reliance on it. *Id.* at 879-81.

In addition, in addressing class certification in a case raising claims about payment for non-tipped work, the Seventh Circuit described the underlying substantive legal issues by relying on the Department's guidance and the holding in *Applebee's*. *See Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014). The court explained that "of course if the tipped employees … perform non-tipped duties (provided those duties are unrelated to their tipped duties …), such as, in the case of restaurant servers, washing dishes, preparing food, mopping the floor, or cleaning bathrooms, they are entitled to the full minimum wage for the time they spend at that work." *Id.* It also approvingly noted that "the Department of Labor … has decided that as long as the tipped employee spends no more than 20 percent of his workday doing non-tipped work related to his tipped work (such as a waiter's setting or clearing a table that he waits on), the employer doesn't have to pay the full minimum wage … for the time the employee spends doing that work." *Id.* (citing 29 C.F.R. 531.56(e); FOH § 30d00(e); *Applebee's*, 638 F.3d 872)).

Furthermore, the Fifth Circuit explicitly deferred to the dual jobs regulation in concluding that servers who spent full shifts as "'Quality Assurance' workers" rather than in their usual roles were not tipped employees for those shifts because they were "not spending 'part of [their] time' on [Quality Assurance] work," but rather were spending *all* of their time during certain shifts on such duties. *Roussell v. Brinker Int'l, Inc.*, 441 F. App'x 222, 225, 233 (5th Cir. 2011) (unpublished) (quoting *Applebee's*, 638 F.3d 880).[7]

4. The district court misconstrued the dual jobs regulation by reading it to apply only to employees with "two or more entirely distinct, non-overlapping jobs" and compounded its error with the conclusory statement that Williams "was

[7] Additionally, in a case regarding a tip pool (in which the employer requires certain employees to share tips), the Sixth Circuit held—without citing to, but consistent with, the dual jobs regulation—that wait staff who spent full shifts preparing salads were not tipped employees during those shifts because they did not interact with customers and the duties they performed were "traditionally classified as food preparation or kitchen support work." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 548, 550 (6th Cir. 1999).

The only circuit court that has arguably expressed a contrary view did so without written analysis in a one-page, unpublished decision. *Pellon v. Bus. Representation Int'l, Inc.*, 291 F. App'x 310 (11th Cir. 2008) (unpublished), *aff'g* 528 F. Supp. 2d 1306 (S.D. Fla. 2007). The district court in that case had granted summary judgment based in part on a finding that the employees' non-tipped duties were related to their tipped jobs (so the employees did not have dual jobs) and in part on the infeasibility of determining whether the employees spent more than 20 percent of their work time on such duties; significantly, however, the court believed such a determination was unnecessary because the employees had not shown that their non-tipped work exceeded that threshold. *See* 528 F. Supp. 2d at 1313-15.

engaged in one occupation, server." Slip op. at 7. The dual jobs regulation introduces the concept of "an employee [who] is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter" without further explaining what constitutes a "job" or "occupation." 29 C.F.R. 531.56(e). Certainly the determination of whether the employee is engaged in two occupations cannot turn, as the district court seems to have believed, on whether the employee has more than one job title. It is a basic premise under the FLSA that "[a] job title alone"—as opposed to an employee's actual job duties—"is insufficient to establish the exempt status of an employee." 29 C.F.R. 541.2 (addressing exemptions under 29 C.F.R. Part 541); *see, e.g.*, *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1056 (8th Cir. 2015) (quoting 29 C.F.R. 541.2 for this point).[8] As the Department's guidance interpreting the dual jobs regulation indicates, whether an employee has both a tipped job and a non-tipped job for a single employer depends on the employee's duties. *See* 1979 Opinion Letter

[8] The determination also does not depend on whether the tipped and unrelated work occurs during the same or separate shifts. The 1980 opinion letter addressing the dual jobs regulation refers to a "clear dividing line" between the tipped and non-tipped occupations, 1980 Opinion Letter, and some courts have read this phrase to mean that a second job is one that occurs during a distinct shift. *See, e.g.*, *Pellon*, 528 F. Supp. 2d at 1313. But the "clear dividing line" to which the letter refers is "between the *types of duties* performed by a tipped employee, such as between maintenance duties and waitress duties," rather than between shifts. 1980 Opinion Letter (emphasis added). A different rule would incentivize employers to mingle tipped and non-tipped work to evade the requirement to directly pay the full minimum wage for the performance of non-tipped duties unrelated to a tipped job.

(concluding that preparing vegetables for use in salads is a duty that is part of the non-tipped job of a chef rather than the tipped occupation of server); 1985 Opinion Letter (same).

5. The district court's reasons for declining to defer to the FOH interpretation were also erroneous. First, its understanding that *Probert* precludes deference to any FOH provision, slip op. at 7 (citing *Probert*, 651 F.3d at 1012), was incorrect. In *Probert*, this Court determined that the FLSA did not apply to a particular employer based on the relevant language of the statute, noting that the legislative history reinforced this conclusion. *See* 651 F.3d at 1010-12 (citing 29 U.S.C. 203(r)(2)(A); S. Rep. No. 89-1487 (Aug. 23, 1966)). Only after so holding did this Court note that the FOH provision addressing the relevant statutory provision did not opine about entities like the employer in the case. The Court's subsequent statement that "it does not appear" that the FOH "is a proper source of interpretative guidance," relying on language in the FOH itself, does not stand for the proposition that the FOH cannot receive deference. Nor does *Christensen v. Harris County*, 529 U.S. 576, 587 (2000), to which *Probert* cites, stand for that proposition. Notably, other courts have deferred to FOH provisions in this and other contexts. *See, e.g.*, *Applebee's*, 638 F.3d 872; *Belt v. EmCare, Inc.*, 444 F.3d 403, 415 (5th Cir. 2006). In any event, the Department has advanced the

interpretation of the dual jobs regulations expressed in the FOH in opinion letters, the 2010 amicus brief, and this brief, all of which themselves merit *Auer* deference.

Second, the district court erred by rejecting the FOH interpretation based on "inconsistent[]" guidance from the Department. The Department has in fact provided almost entirely consistent guidance over the course of decades. Although the opinion letters the court cited do not all reach the same conclusion, that is because they address different facts rather than because they apply different principles. The 1980 letter concluded that when a group of servers were all assigned clean-up work—as distinguished from circumstances in which only certain employees were assigned "maintenance-type work"—those employees were performing "related duties" that were properly treated as part of their tipped employment. 1980 Opinion Letter. The 1985 letter reached two conclusions: when servers performed salad preparation activities, they were doing the job of a chef rather than a server, so no tip credit was permitted; and when a single server spent 30 to 40 percent of the workday performing "preparatory activities," the employer also could not take a tip credit for that time. 1985 Opinion Letter.

The FOH interpretation was based on, and is consistent with, the prior opinion letters. *Compare* FOH § 30d00(e) (explaining, for example, that if "tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance," no tip credit is permissible for that

time) *with* 1985 Opinion Letter (explaining, for example, that if "tipped employees spend a substantial amount of time in performing general preparation work or maintenance," no tip credit is permissible for that time).[9]

The district court's final reason for declining to defer to the FOH interpretation, that the 20 percent tolerance "arbitrarily adds additional requirements" to track employees' duties and pay for non-tipped work, reflects a fundamental misunderstanding of the operation of the tip credit. Under the FLSA, the employer bears the burden of proving that it is entitled to take a tip credit. *See Montano v. Montrose Rest. Assocs.*, 800 F.3d 186, 189 (5th Cir. 2015); *Perez v. Lorraine Enters., Inc.*, 769 F.3d 23, 27, 30 (1st Cir. 2014) (citing *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 467-68 (5th Cir. 1979)); *cf. Applebee's*, 638 F.3d at 882 (affirming the district court's application of the burden-shifting

---

[9] The 2009 letter—the only guidance that reflects a change in the Department's interpretation of the dual jobs regulation, because it rejected the 20 percent tolerance for related, non-tipped duties—was withdrawn in March after being signed in January. *See* 2009 Opinion Letter.

Furthermore, the district court's citation to *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), was unwarranted. The Department's almost unbroken history of applying consistent principles to varied facts involving non-tipped duties is entirely distinguishable from the situation in *Christopher*, in which the Supreme Court refused to accord *Auer* deference to the Department's interpretation of a regulation because, in its view, the Department had changed its reasoning supporting that interpretation during the course of the litigation, the interpretation was likely to cause "unfair surprise," and the interpretation was "flatly inconsistent with the FLSA." *Id.* at 2165-69.

scheme articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), to the issue of whether an employee spent a substantial amount of time performing duties that did not produce tips). Therefore, showing that an employee performs only tipped work or does not exceed the 20 percent tolerance for performing non-tipped, related work, far from being an arbitrary burden, is how an employer can properly justify claiming a tip credit rather than directly paying the full minimum wage. And such a showing should not be onerous because it is within the purview of the employer to both know of and control the tasks of its employees. *See Anderson*, 328 U.S. at 687 ("[I]t is the employer … who is in position to know and to produce the most probative facts concerning the nature and amount of work performed."). Furthermore, the 20 percent tolerance protects against employer manipulation of an ostensibly tipped employee's schedule to include duties, or significant time performing duties, for which an employer would normally directly pay the full minimum wage.

## III. WILLIAMS'S COMPLAINT STATED CLAIMS OF FLSA VIOLATIONS SUFFICIENT TO SURVIVE A MOTION TO DISMISS

The question presented to the district court was whether Williams's complaint sufficiently alleged that Village Inn violated the FLSA by improperly claiming the tip credit as to certain hours worked. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), to survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted).

Here, the complaint included facts sufficient to support claims of two types of minimum wage violations. First, Williams alleged that he spent time performing certain duties—including "scrubbing walls," "cleaning seats," and "cleaning gum from the bottom of tables," Compl. ¶¶ 35-36—unrelated to his tipped occupation. These tasks are those of a maintenance worker or janitor. And Williams specified that Village Inn took a tip credit for all of his work time, directly paying only "the reduced tip credit rate." Compl. ¶¶ 10-14, 22-23, 34. Because under the dual jobs regulation, as properly interpreted, an employer must directly pay the full minimum wage for any time spent performing unrelated, non-tipped duties, these allegations raise "above the speculative level," *Twombly*, 550 U.S. at 570, the possibility that Village Inn violated the FLSA.

Second, Williams alleged that he spent more than 20 percent of each work shift performing duties related to his tipped occupation that did not themselves produce tips, naming particular duties including "refilling salt and pepper shakers," "brewing tea [and] coffee," and "rolling silverware." Compl. ¶¶ 23-25. And again, Williams's complaint specified that Village Inn took a tip credit for all of his work time. Compl. ¶¶ 10-14, 22-23, 34. Based on the Department's interpretation

that the dual jobs regulation means that an employer may not take the tip credit for time spent performing related, non-tipped duties if such duties exceed 20 percent of an employee's hours worked in a workweek, Williams has alleged facts that make out this second "'claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

**CONCLUSION**

This Court should reverse the district court's dismissal of the above-captioned cases.

Respectfully submitted,

M. PATRICIA SMITH
Solicitor of Labor

JENNIFER S. BRAND
Associate Solicitor

PAUL L. FRIEDEN
Counsel for Appellate Litigation

__/s/_Sarah Marcus________
SARAH KAY MARCUS
Senior Attorney
U.S. Department of Labor
Office of the Solicitor
Room N-2716
200 Constitution Avenue, NW
Washington, D.C. 20210
(202) 693-5696

## CERTIFICATE OF COMPLIANCE

This brief complies with the length limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B) because it is 6,992 words long (excluding the parts of the motion exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii)).

This brief also complies with the typeface and typestyle requirements of Federal Rules of Appellate Procedure 32(a)(4), (5) and (6). This brief uses Times New Roman, 14-point font, and all page margins are one-inch.

Additionally, I have scanned this brief for viruses and confirm that the brief is virus-free.

__/s/_Sarah Marcus________
SARAH KAY MARCUS
Senior Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on July 13, 2016, I electronically filed the foregoing motion with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

__/s/_Sarah Marcus_________
SARAH KAY MARCUS
Senior Attorney